**MODERN SETTINGS, INC., and Binder & Binder, as attorneys for Modern Settings, Inc., Plaintiffs,**

**v.**

**PRUDENTIAL–BACHE SECURITIES, INC., Prudential-Bache Metal Co., Inc., Gary Adornato, Felix McCarthy, Richard Berlin, and Frederic Wasserspring, Defendants.**

83 Civ. 6291 (RLC).

United States District Court, S.D. New York.

Oct. 17, 1984.

See also, D.C., 603 F.Supp. 370.

---

Jaffe & Asher, New York City, for plaintiffs; Peter A. Jaffe, Ira N. Glauber, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants Prudential-Bache Securities, Inc., Prudential-Bache Metal Co., Inc., Felix McCarthy, Richard Berlin, Frederic Wasserspring; John M. Friedman, Jr., Scott M. Univer, New York City, of counsel.

Henry Putzel, III, New York City, for defendant Gary Adornato.

## OPINION

ROBERT L. CARTER, District Judge.

The main issue before the court is whether plaintiffs have stated with the requisite particularity, pursuant to F.R.Civ.P. 9(b), various counts of fraud with which they charge defendants. Plaintiffs, Modern Settings, Inc. and Binder & Binder, their attorneys in the transactions at issue, allege that defendants Prudential-Bache Securities, Inc., individual managers and a representative of the firm,[1] Prudential-Bache Metal Co., Inc. and its president have violated section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), section 4(b) of the Commodity Exchange Act, 7 U.S.C. § 6b, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, New York Stock Exchange Rule 405 and NASD Rules of Fair Practice, Article III, Section 2. They also bring counts of common law fraud and defamation. Because the pleadings, founded largely on information and belief, set forth facts which allow only an inference of negligence on defendants' part, defendants' motion to dismiss is granted, but plaintiffs may submit an amended complaint to correct the deficiencies noted herein.

*Background*

Modern Settings manufactures gold jewelry. It obtained the gold used in its manufacturing process from Prudential-Bache Metal pursuant to a Gold Consignment Agreement between Modern Settings, Binder & Binder and Prudential-Bache Metal. The agreement allowed Modern Settings to hold a certain amount of gold on consignment provided that it posted with Prudential-Bache Securities marginable securities having a value of at least 120% of the value of the consigned gold outstanding at any given time.

In conjunction with this arrangement, Binder & Binder maintained a margin securities account at Prudential-Bache Securities. The account also constituted the sole source of liquid funds for plaintiffs' operations and gold buying activities. It consisted of pools of mortgage instruments issued by the Government National Mortgage Association ("GNMA") and the Federal National Mortgage Association ("FNMA"), as well as other conservative investments.

Defendants' valuation of plaintiffs' account is at the center of the dispute in this case. On or about June 16, 1983, at Binder & Binder's request, Modern Settings' interest in a certain GNMA pool was sold and sales proceeds were credited to plaintiffs'

---

1. Defendant Adornato, who is no longer an employee of Prudential-Bache Securities, joined in the motion to dismiss and is not distinguished from other defendants in this discussion.

account. The amount credited to the account was approximately $1,097,000. Defendants derived this figure from a complex mathematical calculation which plaintiffs apparently could not duplicate.

Plaintiffs were apprised orally of the amount credited to their account, and were further informed through confirmation slips, account statements and other documents produced and supplied by defendants. From June 16, 1983, through August 15, 1983, defendants regularly reaffirmed the information provided initially with regard to the sale of these GNMA securities. The same procedure followed Binder & Binder's April, 1983 purchase of a pool of FNMA securities, which was valued at approximately $1,000,000.

Both of defendants' appraisals were, however, inflated by a total of approximately $630,000. Plaintiffs contend that defendants' representations were knowingly false and misleading and/or were so reckless as to amount to fraud. (¶¶ 22, 25). Defendants maintain that upon the facts alleged, fraudulent conduct on defendants' part cannot be inferred. The parties pursue a similar exchange with respect to plaintiffs' allegations of market manipulation by defendants. The allegation is that Prudential-Bache liquidated the accounts of other customers who held the same GNMA and FNMA pools as did Modern Settings with the intent of disrupting the market in such pools in reckless disregard of the consequences of their actions. (¶¶ 34–36).

Defendants are also charged with engaging in unauthorized trading in certain stock held in the account. (¶ 42). Plaintiffs maintain that the losses incurred as a result of the allegedly unauthorized trades, together with the misrepresentations about the value of securities held, triggered margin calls on the account and led eventually to what plaintiffs claim was the wrongful liquidation of the account (¶¶ 31–33) and the consequent cut-off of Modern Settings' gold supply from Prudential-Bache Metal Co. (¶¶ 38–46). Defendants again complain that the allegations are vague and conclusory and fail to apprise them of the fraudulent acts for which they are faulted.[2]

*Discussion*

 Claims of fraud must be pleaded with particularity, F.R.Civ.P. 9(b), both to enable defendants to prepare an adequate defense, *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 768 (S.D.N.Y.1981) (Goettel, J.), *aff'd*, 697 F.2d 296 (2d Cir.1982), and to safeguard defendants' reputations and goodwill since charges of fraud, even without more, are highly damaging. *Decker v. Massey-Ferguson-Ltd.*, 681 F.2d 111, 115 (2d Cir.1982). A plaintiff need not recite the evidence or plead detailed evidentiary matter, but must set forth a factual predicate for the allegations of fraud, including specific facts, the sources from which the facts were derived, and a basis from which an inference of fraud may fairly be drawn. *Crystal v. Foy*, 562 F.Supp. 422, 424–25 (S.D.N.Y.1983) (Weinfeld, J.). A complaint made out largely on the basis of information and belief must include a statement of facts upon which the belief is founded. *Somerville v. Major Exploration, Inc.*, 576 F.Supp. 902, 909 (S.D.N.Y.1983) (Carter, J.).

 A major problem with the complaint, according to defendants, is that plaintiffs have omitted the requisite factual background with respect to the *scienter* element of plaintiffs' federal securities claims.[3] Defendants' point is well-taken.

---

**2.** Plaintiffs seek damages for lost profits and damage to the goodwill of the business. They claim further that the entire business has been jeopardized and seek to recover for the business' lost value. They also allege damages suffered in consequence of defendants' liquidation of their account. Finally, plaintiffs seek damages for alleged defamatory statements and treble damages under RICO.

**3.** Defendants' argument for dismissal of the complaint based on Rule 9(b) is stronger than their contention that the complaint should be dismissed for failure to state a claim upon which relief can be granted based on a reading of *Zerman v. Jacobs*, 510 F.Supp. 132 (S.D.N.Y.) (Weinfeld, J.), *aff'd*, 672 F.2d 901 (2d Cir.1981). Plaintiffs here, unlike in *Zerman*, have grounds on which to claim that their injuries were caused by defendants' allegedly fraudulent acts. *See id.* at 134.

The complaint's allegations regarding defendants' knowledge of the misrepresentations at issue are too conclusory and fail to serve adequately the purposes behind Rule 9(b).

Plaintiffs correctly assert that reckless conduct satisfies the *scienter* requirement of section 10(b) and rule 10b–5, *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38, 45 n. 12, 46 (2d Cir.1978), and that assertions of knowledge need be averred only generally. *Zaretsky v. E.F. Hutton & Co., Inc.*, 509 F.Supp. 68, 75 (S.D.N.Y.1981) (Lowe, J.).[4] Nevertheless, the complaint must make clear that more than mere negligence is alleged. *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442 (2d Cir.1971); *Zerman v. Jacobs*, 510 F.Supp. 132, 134 (S.D.N.Y.) (Weinfeld, J.), *aff'd*, 672 F.2d 901 (2d Cir.1981). The facts disclosed in plaintiffs' complaint do not do so. Plaintiffs describe a gross error on defendants' part in the calculation of the account's assets. But they do not develop facts from which it can be inferred that the error was either known or so obvious that defendants must have been aware of it. *Cf. Somerville v. Major Exploration, supra*, 576 F.Supp. at 909–910. The substance of their claims of either fraud or recklessness has, therefore, been omitted. *See Rolf v. Blyth, Eastman Dillon & Co., Inc., supra*, 570 F.2d at 46–47; *Sundstrand Corp. v. Sun Chemical Corp.*, 553 F.2d 1033, 1044–45 (7th Cir.1977); *Aldrich v. New York Stock Exch.*, 446 F.Supp. 348, 355 (S.D.N.Y.1977) (Werker, J.).[5]

Plaintiffs' claim of market manipulation on defendants' part is subject to the same criticism, although to a lesser degree. While, as plaintiffs contend, some of the facts missing from the complaint are those within defendants' possession, uncovered due to the early stage of the litigation, the allegations read more like factual hypotheses than like factual descriptions of events which have transpired. As a result, the complaint is speculative on the issue of what defendants gained as a consequence of the fraud alleged—information that would seem especially pertinent to the allegation of market manipulation. *Cf. Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1088 (S.D.N.Y.1977) (Gagliardi, J.), *aff'd*, 636 F.2d 1201 (2d Cir.1980). Such speculation is what Rule 9(b) is designed to prevent. *See Liu v. L.F. Rothschild, Unterberg, Towbin*, 1980 Fed.Sec.L. Rep. (CCH) ¶ 97,633 at 98,396 (S.D.N.Y. 1980) (Carter, J.).

Plaintiffs' assertions of unauthorized trading in Coleco stocks are based upon a failure by Prudential-Bache representatives to follow instructions regarding sale and purchases of stock. (¶ 30–32). These allegations sufficiently apprise defendants of

---

**4.** This does not mean, however, that Rule 9(b) is entirely diluted in its effect.

The part of Rule 9(b) which permits a general averment of condition of mind does not preclude the allegation with particularity of the circumstances constituting the fraud required under the first sentence of the rule.

*Aldrich v. New York Stock Exch.*, 446 F.Supp. 348, 355 n. 4 (S.D.N.Y.1977) (Werker, J.). *See also Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F.Supp. 518, 523–24 (S.D.N.Y.1977) (Werker, J.).

**5.** *Peters v. Prudential-Bache Sec., Inc.*, 572 F.Supp. 1085, 1983 Fed.Sec.L.Rep. (CCH) ¶ 99,561 (N.D.Ill.1983) is not support enough for plaintiffs' position. In *Peters*, the court found sufficiently pleaded allegations of fraud involving misrepresentations concerning a securities account. However, although factual similarities between *Peters* and the case before this court are apparent, the claims made in the respective complaints are not so apparently alike. While the opinion, which is relatively brief, gives few details of the nature of the complaint, plaintiffs in Peters asserted not only that defendants wilfully made factual misstatements concerning plaintiffs' account, but that Prudential Bache, the firm involved, was making a market in the stocks at issue. The complaint here, drawn on information and belief, does not succeed in making that assertion. *See infra*, discussion of market manipulation alleged by plaintiffs. *See also* Affidavit of Harry J. Binder (mis-valuation of GNMAs and FNMAs is pervasive problem at Prudential Bache, occurring "perhaps due to [Prudential-Bache's] own ineptitude.") *Id.* at ¶ 15.

*Peters* reaffirmed the principle of Rule 9(b), that "[f]acts amounting to a form of deception must appear in the complaint," *id.* at 572 F.Supp. 1085, 1983 Fed.Sec.L.Rep. (CCH) ¶ 97,219, and to the extent the *Peters'* court reached a different judgment on facts analogous to those pleaded here, the court declines to follow it.

the transactions at issue in that they specify, for the most part, the dates on which the transactions occurred, and the number and kind of stock positions disputed. The allegation that the representative pursuing the stock trades "fraudulently expos[ed] the Account to further losses," is, however, conclusory; the pleadings do not permit the court to infer legitimately the wilful destruction of plaintiffs' account, despite plaintiffs' implications to this effect elsewhere. *See* Affidavit of Harry J. Binder, ¶¶ 14–17. A violation of either section 10(b) of the Securities Exchange Act, or of section 4b of the Commodity Exchange Act is not, therefore, sufficiently pleaded.[6]

As to plaintiffs' assertions concerning the wrongful liquidation of the account, no facts, apart from those set forth with regard to the claim of market manipulation, previously discussed, describe a claim of fraud or recklessness. Plaintiffs maintain that the margin calls on its account were improper because the de-valuation of the account was attributable to defendants' errors alone. (¶ 42). They also contend that the liquidation of the account was conducted in a malicious manner. (¶ 51). The former allegation is not, on its face, one of fraud. The latter is both vague and conclusory. Neither withstands defendants' 9(b) challenge in the absence of particularized pleadings elsewhere in the complaint which might support these claims.

In light of the court's disposition of the claims made pursuant to the anti-fraud provisions of the federal securities laws, there is no need to address the sufficiency of plaintiffs' allegations of defamation, nor of those pertaining to violations of New York Stock Exchange Rule 405 and Article III, § 2 of the NASD Rules of Fair Practice. It is noted here briefly that the federal rules do not require special pleading for charges of libel and slander, *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980), and on cursory review, plaintiffs' allega-

tions appear to notify defendants adequately of the defamatory remarks of which plaintiffs complain. On the other hand, defendants' point with respect to the absence of a private right of action for violations of New York Stock Exchange Rule 405 and Article III, § 2 of the NASD Rules seems amply supported. *See, e.g., Juster v. Rothschild, Unterberg, Towbin,* 554 F.Supp. 331, 333 (S.D.N.Y.1983) (Knapp, J.); *Klitzman v. Bache Halsey Stuart Shields, Inc.,* 499 F.Supp. 255, 258–59 (S.D.N.Y.1980) (Duffy, J.). Indeed, plaintiffs appear to concede this issue.

Finally, the recent second circuit opinion, *Sedima, S.P.L.R. v. Imrex Co., Inc. Armon and Armon,* 741 F.2d 482, at 496 (2d Cir.1984), casts serious doubt over the viability of plaintiffs' RICO charge, even assuming plaintiffs amend their complaint to state a cause of action pursuant to the federal securities laws. (Prior criminal conviction prerequisite to civil RICO action).

Leave to replead is granted. Plaintiffs' second amended complaint, if any, must be filed with this court by November 2, 1984.

. IT IS SO ORDERED.

---

**6.** Insofar as reliance is placed on section 4b of the Commodity Exchange Act, it is not necessary for plaintiffs to allege that the Prudential-Bache representative acted with evil motive or an intent to injure plaintiffs. However, plaintiffs must give some indication that defendants acted with knowledge that their acts were unauthorized and contrary to instructions. *See Haltmier v. Commodity Futures Trading Comm'n,* 554 F.2d 556, 562 (2d Cir.1977).