**MODERN SETTINGS, INC., and Binder & Binder, as attorneys for Modern Settings, Inc., Plaintiffs,**

v.

**PRUDENTIAL–BACHE SECURITIES, INC., Prudential-Bache Metal Co., Inc., Gary Adornato, Felix McCarthy, Richard Berlin and Frederic Wasserspring, Defendants.**

No. 83 Civ. 6291 (RLC).

United States District Court,
S.D. New York.

Feb. 27, 1985.

Jaffe & Asher, New York City, for plaintiffs; Peter A. Jaffe, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Prudential-Bache defendants; Leonard Joseph, Scott M. Univer, Steven J. Miller, New York City, of counsel.

Henry Putzel, III, New York City, for defendant Gary Adornato.

OPINION

ROBERT L. CARTER, District Judge.

In an opinion and order dated October 17, 1984, 602 F.Supp. 511 (*"Modern Settings I"*), the court dismissed plaintiffs' amended complaint for failing to state with the requisite particularity under Rule 9(b), F.R. Civ.P., various counts of fraud with which they charged defendants. The court granted plaintiffs leave to replead; they have repleaded, and defendants have moved to dismiss the second amended complaint on the same grounds as the first.

The facts of this case are set out in the October 17 opinion, with which familiarity is assumed. In brief, the plaintiffs charge that defendants fraudulently misvalued the assets held by plaintiffs in an account maintained by defendants, fraudulently liquidated plaintiffs' account, and slandered the plaintiffs. The first two counts of the second amended complaint, now before the court, allege that the defendants violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and § 4(b) of the Commodity Exchange Act, 7 U.S.C. § 6(b), and committed common-law fraud. The third count alleges defamation, and the fourth count alleges violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962.

*Plaintiffs' first claim for relief*

Plaintiffs' first count alleges that the defendants fraudulently misvalued plain-

tiffs' interest in pools of mortgage instruments issued by the Government National Mortgage Association (GNMA) and the Federal National Mortgage Association (FNMA) and maintained at Prudential-Bache Securities. The court dismissed a similar claim in the first amended complaint for failure to "develop facts from which it [could] be inferred that the error was either known or so obvious that defendants must have been aware of it." *Modern Settings I, supra,* 602 F.Supp. at 514. *See also Crystal v. Foy,* 562 F.Supp. 422, 424–25 (S.D.N.Y.1983) (Weinfeld, J.) (a plaintiff alleging fraud must set forth a factual predicate for the allegations, including specific facts, the sources from which the facts were derived, and a basis from which an inference of fraud may fairly be drawn).

Plaintiffs claim that this defect is cured in the second amended complaint. Plaintiffs no longer contend, as they did in the first amended complaint, that the misvaluation itself was fraudulent. Rather, they allege that the misvaluation is evidence from which it may be inferred that defendants failed to employ a "reliable system of checks and balances to prevent or timely warn of such errors" (Complaint ¶ 29). The need for such a system, plaintiffs assert, was well known to defendants because errors had occurred in valuating GNMA or FNMA securities in three other accounts in April and July, 1983 (Complaint ¶ 30). The failure to employ a reliable checking system under these circumstances, plaintiffs conclude, constituted "a reckless disregard of the consequences of [the] failure [to employ such a system] tantamount to fraud" (Complaint ¶ 33).

■ It is true that reckless conduct satisfies the scienter requirement of § 10(b) and Rule 10b–5. However, the complaint must make clear that more than mere negligence is alleged. *Modern Settings I, supra,* 602 F.Supp. at 514, and cases cited there. "[I]f recklessness means something more culpable than negligence, as it must, then an allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness." *Troyer v.*

*Karcagi,* 476 F.Supp. 1142, 1152 (S.D. N.Y.1979) (Sweet, J.). Reckless conduct "is, at the very least, conduct which is 'highly unreasonable' and which represents 'an extreme departure from the standards of ordinary care ... to the extent that the danger was known to the defendant or so obvious that the defendant must have been aware of it.'" *Rolf v. Blyth, Eastman Dillon and Co., Inc.,* 570 F.2d 38, 47 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978), *appeal after remand,* 637 F.2d 77 (2d Cir.1980) (citations omitted).

■ In this case, plaintiffs have not pleaded facts from which it may be inferred that the danger of misvaluation was either known or so obvious that defendants *must* have been aware of it. Plaintiffs' allegations that some kind of error occurred in three other GNMA or FNMA accounts are not, by themselves, sufficient to support the inference that defendants must have known that the specific kind of error that occurred in the Modern Settings account was possible. Indeed, the account executive responsible for plaintiffs' account testified that the earlier misvaluations did not involve the kind of error—misapplication of the "amortized value factor"—that was involved in the Modern Settings misvaluation, and that, as far as he knew, the error made in Modern Settings' account was unprecedented, (Deposition of Gary Adornato, at 103–104). Plaintiffs' allegations may (though the court does not decide) permit an inference of negligence, but they certainly do not rise to the level of permitting an inference of recklessness.

Plaintiffs make a second claim under the first count for fraud—"reckless reassurance." They allege that the defendants repeatedly assured them that the valuations were correct and that precautions to insure accuracy were being taken. For instance, plaintiffs say they were told that at least five separate persons or offices within the corporate defendants were reviewing each transaction and checking for errors (Complaint ¶ 36). Plaintiffs allege these assurances were given after defendants were put on notice to be especially

careful in evaluating the Modern Settings account—both by plaintiffs, who informed defendants that plaintiffs did not understand the valuation process and would rely on defendants' figures, and by the appearance of other unrelated errors in plaintiffs' account (Complaint ¶¶ 35–37). Plaintiffs argue that the assurances were fraudulent in that they were recklessly made (Complaint ¶ 43).

■■■ A statement is recklessly made if it is made "without investigation and with utter disregard for whether there was a basis for the assertions." *Rolf v. Blyth, Eastman Dillon and Co., Inc., supra,* 570 F.2d at 47–48. In this case, plaintiffs do not allege that the defendants gave the assurances without investigating to determine whether the safeguards were really being used. What is more, plaintiffs do not even allege that the promised precautions were not actually (if unsuccessfully) employed. Thus, there is no allegation that five different persons or offices did not in fact check the transactions, or that the defendants gave the assurance "with utter disregard" for whether five different persons or offices were really checking. Plaintiffs argue that the fact that the error occurred proves that the promised precautions could not have been in use. But the mere occurrence of the error is not sufficient to justify the inference that the promised system was not being employed. *See Aldrich v. New York Stock Exchange, Inc.,* 446 F.Supp. 348, 356 (S.D.N.Y.1977) (Werker, J.). The claim of "reckless reassurance," therefore, is not supported by sufficient specific factual allegations.

Plaintiffs make a third claim under the first count for fraud. They allege that Gary Adornato, the Prudential-Bache Securities account executive handling plaintiffs' account, fraudulently traded in Coleco stocks using plaintiffs' assets, against plaintiffs' express instructions. A similar claim in the first amended complaint was dismissed because the pleadings did not permit the court to infer the willful destruction of plaintiffs' account. Now plaintiffs argue that they never meant to imply that defendants were destroying plaintiffs' account willfully. Rather, they argue that the unauthorized trading itself constituted fraud. Plaintiffs also add two new important factual allegations. First, they claim that when the plaintiffs gave Adornato instructions to stop speculating in Coleco stocks, plaintiffs told Adornato that if he did not comply they would inform Adornato's superior. According to plaintiffs, Adornato told the plaintiffs he would comply, but actually did not, causing losses in plaintiffs' account (Complaint ¶¶ 47–48). Second, plaintiffs claim that Adornato did not comply in order to earn the higher commissions that went along with the sort of investment—specifically, the exercise of a put option—he was engaging in (Complaint ¶ 49).

■■■ Here plaintiffs *have* alleged facts that permit the court to infer fraud in general and scienter in particular. According to plaintiffs, Adornato stated that his current intention was to liquidate the put position, but he did not liquidate. From this, the court may legitimately infer that Adornato's statement of current intention was false, that Adornato knew it was false, and that he made the false statement with the motive of earning a higher commission. Plaintiffs relied on the misrepresentation by not informing Adornato's superior, and were damaged. The court, therefore, cannot dismiss plaintiffs' claim of fraudulent trading in Coleco stock.

*Plaintiffs' second claim for relief*

Plaintiffs allege that on August 22, 1983, Prudential-Bache Securities liquidated all or a substantial portion of plaintiffs' account, at a $250,000 loss to plaintiffs, purportedly because plaintiffs failed to meet margin calls (Complaint ¶¶ 56–57). Plaintiffs argue that the liquidation was fraudulent in that it was carried out hastily and maliciously, and was part of an attempt by defendants to manipulate the market in GNMA and FNMA pools and other securities (Complaint ¶¶ 66–71). In dismissing the first amended complaint, the court found that the charges of malicious liquida-

tion were "vague and conclusory," *Modern Settings I, supra,* 602 F.Supp. at 515, and that the charges of market manipulation were "speculative on the issue of what defendants gained as a consequence of the fraud alleged[.]" *Id.* at 514.

Plaintiffs have corrected those defects in their second amended complaint. Specifically, plaintiffs allege that shortly before defendants liquidated plaintiffs' account, they liquidated large positions of one or more other customers in GNMA and FNMA pools (Complaint ¶ 67). These liquidations, plaintiffs assert, were carried out abruptly, in an unreasonable and disorderly fashion (Complaint ¶ 68). By dumping on the market large amounts of GNMA and FNMA pools, plaintiffs claim, defendants artificially depressed the market price. When plaintiffs' position in the pools was abruptly liquidated, too, plaintiffs charge, prices were driven down even further (Complaint ¶ 68). Plaintiffs allege that Prudential-Bache Securities profited from this malicious liquidation and market manipulation by purchasing for itself the undervalued securities and reselling them at a profit, and by reselling the securities at the depressed price to preferred customers who then resold at higher prices—thus creating both goodwill and commissions for Prudential-Bache Securities.

■ Defendants argue that plaintiffs' allegations are unsupported by the requisite specific facts. Rule 9(b), however does not require a plaintiff to "recite the evidence or plead detailed evidentiary matter[.] *"Modern Settings I, supra,* 602 F.Supp. at 513. It merely requires sufficient factual particularity to enable defendants to prepare an adequate defense, *Posner v. Coopers & Lybrand,* 92 F.R.D. 765, 768 (S.D.N.Y. 1981) (Goettel, J.), *aff'd,* 697 F.2d 296 (2d Cir.1982), and to safeguard defendants' reputations and goodwill since charges of fraud, even without more, can be highly damaging. *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 115 (2d Cir.1982). Plaintiffs have carried this burden. Moreover, Rule 9(b) "is not a vehicle by which

potentially meritorious claims are to be driven out of court because the plaintiff has failed to allege facts that he can only obtain through taking discovery that he has thus far been denied. Here, the facts of which plaintiffs are aware reasonably support their claim that defendants acted with scienter; having alleged those facts, they cannot in justice be asked to go further at this juncture of the litigation, and the court declines to interpret Rule 9(b) as demanding that they do." *Gibbons v. Udaras na Gaeltachta,* 549 F.Supp. 1094, 1124 (S.D.N.Y.1982) (Ward, J.) (citations omitted).

■ Defendants also argue that the alleged abrupt liquidations of a few accounts could not possibly have affected the price of GNMA and FNMA pools, in view of the multi-billion dollar size of the government-backed mortgage securities market.[1] Plaintiffs counter that their particular GNMA and FNMA pools were not heavily traded, and that the market price was determined by the price of the immediately preceding trade. Thus, they conclude, defendants did have the ability unilaterally to depress the market price of the pools. Whether defendants actually had this ability, and if so whether they exercised it, are questions of fact. At this stage of the litigation the court cannot resolve questions of fact; it can only determine whether the defendants have pleaded requisite facts with sufficient particularity to sustain a claim for fraud. The court finds that the plaintiffs have done so.

Plaintiffs also allege other facts to support their charges of malicious liquidation and market manipulation. Specifically, plaintiffs allege (1) that the liquidation was improper because any undermargining was not plaintiffs' fault but rather the result of defendants' reckless misvaluation and unauthorized Coleco trading (Complaint ¶ 56); (2) that the liquidation was malicious because it resulted from an intra-corporate dispute within the corporate defendants (Complaint ¶ 66); (3) that the liquidation was intentionally carried out hastily by Fe-

---

1. Defendants cite a newspaper report that new sales of GNMA unit trusts amounted to $3.2 billion in 1982 and $4.3 billion in 1983. New York Times, Dec. 7, 1984, at D1, col. 3.

lix McCarthy, the Melville, Long Island branch manager, so that all commissions would be credited to him after Adornato had been removed from the Modern Settings account but before a new account executive could be appointed (Complaint ¶ 70); and (4) that defendants liquidated plaintiffs' interests in other securities—shares in Monchik Weber Corp. and in Quality Systems, Inc.—to depress their prices, too. In light of the court's decision that sufficient specific facts have been alleged to justify the inference of market manipulation and malicious liquidation with respect to the alleged abrupt liquidation of GNMA and FNMA pools, it is not necessary to determine the sufficiency of these other factual allegations.

*Plaintiffs' third claim for relief*

Plaintiffs' third count, for defamation, states a claim for which relief can be granted. As noted in the court's October 17 opinion, the federal rules do not require special pleading of facts for charges of libel and slander. *Modern Settings I, supra,* 602 F.Supp. at 515, citing *Geisler v. Petrocelli,* 616 F.2d 636, 640 (2d Cir.1980). The claim, therefore, is not dismissed.

*Plaintiffs' fourth claim for relief*

 Plaintiffs' RICO claim is foreclosed by the recent decisions in this circuit, *Sedima, S.P.R.L. v. Imrex Co., Inc.,* 741 F.2d 482 (2d Cir.1984) and *Bankers Trust Co. v. Rhoades,* 741 F.2d 511 (2d Cir.1984). These decisions require that in order to state a cause of action under RICO, "there must be a 'violation,' that is, criminal convictions on the underlying predicate offenses [or] a conviction under RICO itself." *Sedima, S.P.R.L. v. Imrex Co., supra* 741 F.2d at 503. Plaintiffs have alleged no such convictions. Moreover, these decisions also require that to have standing under RICO, a plaintiff must allege a "'racketeering injury' [, that is,] injury different in kind from that occurring as a result of the predicate acts, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter." *Id.* at 496. Plaintiffs have not alleged any "racketeering injury";

the only injury alleged flows directly from the predicate acts. Accordingly, the fourth claim is dismissed.

*Conclusion*

Defendants' motion to dismiss with prejudice is: (1) granted with respect to plaintiffs' first cause of action insofar as that cause of action is predicated on misvaluation of plaintiffs' account and on "reckless reassurance"; (2) denied with respect to plaintiffs' first cause of action insofar as that cause of action is predicated on defendants' trading in Coleco shares; (3) denied with respect to plaintiffs' second cause of action; (4) denied with respect to plaintiffs' third cause of action; and (5) granted with respect to plaintiffs' fourth cause of action.

IT IS SO ORDERED.