■ PRUDENTIAL-BACHE METAL Co., INC., Respondent, v HARRY BINDER et al., Appellants.—Order of the Supreme Court, New York County (David H. Edwards, J.), entered April 1, 1985, which denied defendants' motion for an order, *inter alia,* dismissing the complaint pursuant to CPLR 3211 (a) (7) as against all defendants except Modern Settings, Inc., is unanimously modified, on the law, to dismiss the first cause of action as to all defendants except Modern Settings, Inc., to dismiss the second and third causes of action as to defendant Harry Binder, to dismiss the fourth, fifth and sixth causes of action against all defendants except Modern Settings, Inc. and Bialystock & Bloom Productions, Inc., and otherwise affirmed, without costs.

Plaintiff Prudential-Bache Metal Co., Inc. (Prudential) is a commodities dealer in New York City. Defendant Modern Settings, Inc. (Modern) is a New York corporation which manufactures gold jewelry. Defendant Harry Binder is the president and 100% owner of Modern and defendant Charles

Binder, Harry's brother, is the vice-president, secretary and treasurer of Modern. Defendant Binder & Binder is a law firm whose partners are Harry Binder and Charles Binder. Finally, defendant Bialystock & Bloom Productions, Inc. (Bialystock), a New York corporation, owns the real estate where Modern is housed. Harry and Charles Binder are also the owners and officers of this corporation.

On February 1, 1983, Prudential entered into a gold consignment agreement with Modern and Binder & Binder. Under the agreement, it consigned 1,500 troy ounces of gold to Modern. As collateral for the gold, Modern and Binder & Binder, as escrow agent and attorneys for Modern Settings, agreed to maintain with Prudential-Bache Securities, Inc. (Prudential Securities) acceptable securities with a current market value of at least 120% of the value of the gold.

The agreement was signed by Prudential, Modern Settings (Harry Binder, as president) and Binder & Binder, as attorneys (Harry Binder as a partner).

Thereafter, the value of the collateral for the consigned gold fell below the amount required by the consignment agreement.

Without in any way rescinding a notice of default or waiving its right to immediate payment for inadequately collateralized gold in Binder's possession, Prudential agreed to sell 1,200 ounces of additional gold to Modern Settings, conditioned upon defendants' various representations which were memorialized in a letter agreement of August 24, 1983.

The letter agreement stated that prior to its execution, Prudential had delivered 400 of the 1,200 ounces of gold to Modern Settings. Prudential was to deliver the remaining 800 ounces upon Modern Settings' payment in full of the entire purchase price of the 1,200 ounces or upon receipt of: a note executed by Modern Settings and Bialystock as joint obligors; a mortgage covering the premises executed by Modern Settings and Bialystock; and various other instruments. Both Modern Settings and Bialystock agreed to use their "best efforts" to cause the various instruments to be delivered to respondents as soon as reasonably practicable.

The letter agreement provided that it "is solely for the benefit" of Prudential, Bialystock and Modern Settings. The letter agreement was signed by Prudential, Modern Settings (Harry Binder as president), and acknowledged by Bialystock (Harry Binder as president).

None of the security instruments was delivered to Pruden-

tial by the September 30, 1983 deadline. Thereafter, Prudential brought this action.

Defendants moved, *inter alia,* for an order dismissing the complaint pursuant to CPLR 3211 (a) (7), for failure to state a cause of action, as to all defendants except Modern Settings. Special Term denied this motion in toto. We find this decision to have been error.

The first cause of action seeks damages for breach of contract from Modern Settings, Harry and Charles Binder, and Binder & Binder for their alleged failure to pay for or return 1,500 ounces of gold held on consignment by Modern Settings. It alleges, *inter alia,* that "the partnership of Binder and Binder, which had agreed to guarantee Modern Settings' obligation to Prudential-Bache, breached the Consignment Agreement by failing to fulfill the guarantee".

However, upon review of the agreement of February 1, 1983, as well as other exhibits before Special Term, there is nothing to support Prudential's allegation that Binder & Binder agreed to so guarantee Modern Settings' obligations. Modern Settings was the buyer under the agreement and Prudential the seller. Binder & Binder executed it solely "as attorneys" for Modern Settings. In essence, securities were to be deposited by Modern Settings into an account maintained at Prudential Securities by Binder & Binder as attorneys and escrow agent for Modern Settings. The partnership was the nominal owner of the collateral held in the securities account maintained at Prudential Securities. The beneficial owner was Modern Settings and its Federal identification number was used with respect to the account.

Binder & Binder, as escrow agent and attorneys for Modern Settings, agreed to post the securities as collateral for Prudential's sale of gold. Their obligation pursuant to the consignment agreement, however, is clearly limited to the deposited collateral which was apparently liquidated by Prudential. There was no liability for breach of contract, i.e., a guarantee, since Binder & Binder never entered into a guarantee agreement. "The obligation of a guarantor is, admittedly, a heavy one, and the courts should refrain from foisting such an obligation upon a party, be he individual or corporation, who simply signs as agent, absent the requisite clear and unequivocal evidence, to be gathered from the writing itself, that he intended to assume such a liability." *(Savoy Record Co. v Cardinal Export Corp.,* 15 NY2d 1, 6-7.)

Plaintiff asserts that since the complaint alleges the exis-

tence of a guarantee, the cause of action against Binder & Binder must be upheld. However, the consignment agreement shows no guarantee by the partnership. When evidentiary material submitted in support of a complaint demonstrates that a material fact claimed by the plaintiff is not a fact at all, there is no bar to a dismissal of the complaint for failure to state a cause of action. *(See, Guggenheimer v Ginzburg,* 43 NY2d 268, 275.)

Further, as to defendants Harry and Charles Binder individually, there is no allegation that they ever agreed to guarantee Modern Settings' debts. The mere facts that they are shareholders and/or officers of Modern Settings does not make them personally liable for the alleged breach of contract by the corporation. *(See, Billy v Consolidated Mach. Tool Corp.,* 51 NY2d 152, 163.)* Neither executed the consignment agreement in his individual capacity and the agreement contains no language which would support a finding of personal liability as to them.

Prudential concedes that the second cause of action for certain consignment fees allegedly due under the consignment agreement is properly asserted only against Modern Settings and not against Harry Binder. The third cause of action, according to Prudential, alleges fraud on the part of Modern Settings and Harry Binder in connection with the dishonoring of two checks. However, there are no substantive allegations of the complaint to the effect that Harry Binder was responsible for, knew about, or participated in the alleged fraud. Absent an allegation that an officer personally participated in or had actual knowledge of the issuance of bad checks, there can be no individual liability. *(Marine Midland Bank v Russo Produce Co.,* 50 NY2d 31, 44.)

The fourth, fifth and sixth causes of action arise under the letter agreement of August 23, 1983. In the fourth cause of action, Prudential seeks damages against all defendants for allegedly failing to pay for approximately 400 ounces of gold sold to Modern and for failing to provide security instruments with respect to the sale. The fifth cause of action seeks damages from all defendants for Prudential's alleged mitigation losses. The letter agreement was executed only by defendant Modern Settings and plaintiff Prudential with an acknowledgment by Bialystock. The representations in the letter agreement were made on behalf of Modern, not Harry or Charles Binder or Binder & Binder. None of these signed the letter agreement in his personal or partnership capacity and nothing in that agreement shows any assumption of personal

liability by them. Thus, Binder & Binder and Harry and Charles Binder were improperly named as defendants on these causes of action. However, defendant Bialystock was obligated to provide security under the letter agreement for the gold sold to Modern Settings and is, therefore, a proper party to the fourth and fifth causes of action.

The sixth cause of action seeks damages against all the defendants for allegedly fraudulently inducing Prudential to ship 400 ounces of gold to Modern Settings in reliance on their misrepresentations as to their intention to provide Prudential with collateral security instruments. The complaint states that all of the alleged fraudulent "representations were memorialized" in the letter agreement, and that those "representations, statements and warranties" are incorporated by reference into the complaint. The letter agreement itself states that it sets forth the "results of various discussions between [Modern Settings] and Prudential-Bache Metal Co. Inc." and that it "embodies the entire understanding of Pru-Bache and [Modern Settings] with respect to the sale of the Gold". This agreement contains no representations whatsoever on the part of Binder & Binder, Harry Binder or Charles Binder. Only Modern Settings and Bialystock made any representations or acknowledgments to Prudential in the letter agreement. Hence, the sixth cause of action does not allege a valid cause of action for fraud against the partnership and the individual defendants. Concur—Sullivan, J. P., Asch, Fein and Milonas, JJ.