MODERN SETTINGS, INC. and Binder
& Binder, as attorneys for Modern
Settings, Inc., Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES,
INC., Prudential–Bache Metal Co., Inc.,
Felix McCarthy and Fredric Wasserspring, Defendants.

No. 83 Civ. 6291 (RLC).

United States District Court,
S.D. New York.

Dec. 5, 1989.

Jaffe and Asher, New York City, for plaintiffs; Peter A. Jaffe, Ira N. Glauber, Richard T. Walsh, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for defendants; John M. Friedman, Jr., Charles Chasin, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The facts relevant to this case are amply described in the many opinions it has generated,[1] and can be briefly stated here. Plaintiff Modern Settings [2] was the beneficial owner of a margin account maintained at Prudential–Bache Securities ("PBS"). In the last opinion in this case, *Modern Settings, Inc. v. Prudential–Bache Securities, Inc.*, 709 F.Supp. 70 (S.D.N.Y.1989) (Carter, J.), the court held: (1) PBS liable for negligent misrepresentation and breach of fiduciary duty in misvaluing Modern Settings' account, *id.* at 74; (2) PBS and Prudential–Bache Metal Co. ("PBM") liable for wrongful liquidation of that account, *id.* at 75; and (3) PBS and PBM liable for unauthorized trading in the account, *id.* at 76.

---

1. 602 F.Supp. 511 (S.D.N.Y.1984) (Carter, J.); 603 F.Supp. 370 (S.D.N.Y.1985); 629 F.Supp. 860 (S.D.N.Y.1986); 83 Civ. 6291, slip op. (May 6, 1988) [1988 WL 49056]; 709 F.Supp. 70 (S.D.N.Y.1989).

2. Although Bialystock and Bloom Productions, Inc. has been declared the rightful owner of Modern Settings' claims, slip opinion, *supra* at 9, for convenience, this opinion will refer to Modern Settings as the sole plaintiff.

Modern Settings has assigned its claims in this action to Bialystock and Bloom Productions ("Bialystock"). Pursuant to a related but separate 1983 gold consignment agreement, PBM acquired a claim against Modern Settings for 1500 ounces of gold. Modern Settings was adjudged a bankrupt on March 25, 1986.[3]

The court now considers whether PBS, which purports to own PBM's independent claim against Modern Settings for the gold consignment, should be allowed to set off that claim against its liability to Modern Settings. Modern Settings opposes setoff arguing first that the claim that PBS seeks to set off actually belongs to PBM and, consequently, that no setoff is available. In support of this position it points out that, although the assignment to PBS is alleged to have taken place in August of 1983, PBM, not PBS, commenced an action in January of 1984 in New York Supreme Court against Modern Settings, *et al.* to recover on the gold claim.[4] Modern Settings argues that, if there had been a true assignment in 1983, PBM would have had no right to bring suit on its own behalf in 1984. Along the same lines, Modern Settings has provided a copy of the proof of claim filed by PBM with the United States Bankruptcy Court in April of 1986 stating that Modern Settings was indebted to PBM (not PBS) for failure to pay for or return the gold.[5]

If the court finds that assignment did occur, Modern Settings then argues that the assignment must have been made solely for the purpose of providing PBS with a possible setoff claim. Such an assignment is prohibited by Section 553 of the Bankruptcy Code, 11 U.S.C. § 553 (1988). In the alternative, Modern Settings contends that PBS's claim lacks mutuality and that the mutuality requirement under Section 553 should not be ignored, even to prevent injustice.

In response, defendants insist that the claim they seek to set off was validly assigned to PBS by PBM. They further assert that they need not show mutuality in order to set off their claim. If mutuality is required, they contend that it is present in this case. Finally, they argue that the court should allow setoff on equitable grounds, even if mutuality is ordinarily required and is absent in this case.

Regarding the factual matter of whether PBM's gold claim was in fact assigned to PBS, the court determines that such assignment did occur. The only testimony regarding the assignment was that of PBM's former Vice-President in charge of Accounting and Operations, Arthur Weissglass. Weissglass specifically described the sale of the account receivable (the 1500oz. gold claim) to PBS in August of 1983. (T294–95). Modern Settings chose not to cross examine him (T295) and provides no information indicating that his testimony should be discredited.

By contrast, the contradictory "evidence" provided by Modern Settings is less than dispositive. According to Modern Settings, the fact that PBM rather than PBS sued on the gold claim in New York County and filed the proof of claim demonstrates that the former still controlled the claim. Yet it is undisputed that PBM retained its claim against Modern Settings for a 405oz. gold consignment (though not the 1500oz. consignment), and, as defendants point out, one who has assigned *part* of his claim may still sue in his own name. *Marrero v. Levitt,* 3 Misc.2d 555, 557, 152 N.Y.S.2d 802, 804 (Mun.Ct.1956) (citing *Nat'l Bank of Bay Ridge v. Albers,* 244 App.Div. 127, 128–29, 278 N.Y.S. 381, 383–84 (1935)). The opinions cited by Modern Settings to the contrary are not persuasive as they involve cases in which the assignor's entire interest in the claim was transferred. *James McKinney & Son, Inc. v. Lake Placid 1980 Olympic Games, Inc.,* 61

---

**3.** *See In re Modern Settings, Inc.,* Index No. 086–60030–21 (Bankr.E.D.N.Y.).

**4.** *See Prudential–Bache Metal Co. v. Binder,* 121 A.D.2d 923, 504 N.Y.S.2d 646 (1st Dept.1986).

**5.** The proof of claim was amended in 1988, shortly after the federal trial, to list PBS as the owner of the claim. Modern Settings insists that this is not credible and that no true assignment occurred.

N.Y.2d 836, 473 N.Y.S.2d 960, 462 N.E.2d 137 (1984); *Acme Blacktop Paving Corp. v. Brown & Matthews, Inc.*, 30 A.D.2d 1042, 294 N.Y.S.2d 826 (4th Dept.1968).

■ For the same reasons, the court finds that the assignment was not performed solely to provide PBS with a setoff, as Modern Settings alleges, and is valid under Section 553.[6] The assignment, as described by Weissglass, took place in August of 1983, some three years before Modern Settings filed for bankruptcy. It is therefore not credible, in the absence of some tangible showing by Modern Settings, that the transfer was performed only in anticipation of a possible setoff under the bankruptcy laws several years in the future.

Despite the validity of the assignment, defendants' arguments that mutuality of claims is unnecessary under these circumstances and alternatively, that mutuality exists in this case, are clearly erroneous. The previous opinion in this case, 709 F.Supp. at 76, set out the general mutuality limitations on the right to setoff:

> The law seems clear that a setoff is not ordinarily allowable in the circumstances of this case. Where one of the parties is a bankrupt, the debts and credits have to be mutual and mutuality exists only when the debts and credits are to the same party. *Bayliss v. Rood,* 424 F.2d 142 (4th Cir.1970); *In re Visiting Home Services, Inc.,* 643 F.2d 1356, 1360 (9th Cir.1981); *Josephine A. Beecher v. Peter A. Vogt Manufacturing Co.,* 227 N.Y. 468, 125 N.E. 831 (1920); *Manchester Insurance & Indemnity Co. v. Manchester Premium Budget Corp.,* 469 F.Supp. 126, 129 (E.D.Mo.1979); *In re Diesel Motors Co., Inc. v. Kaye,* 74 Misc.2d 302, 345 N.Y.S.2d 870, 875 (Nassau Co.1973). For debts to be mutual they must be in the same right and between the same parties, standing in the same capacity. 4 Collier on Bankruptcy (14th Ed.1978) ¶ 68.04[21] at 867.... [W]here the liability of the party seeking a setoff arises

from a fiduciary obligation, there is lacking the requisite mutuality; thus a setoff is not allowable. *Allegaert v. Perot,* 466 F. Supp. 516 (S.D.N.Y.1978) (Knapp, J.).

■ The court has already held that PBS breached a fiduciary obligation to Modern Settings when it misvalued and wrongfully liquidated Modern Settings' account. 709 F.Supp. at 73–74. Thus, mutuality of claims is absent in this case and setoff would ordinarily be unavailable. Despite this conclusion, the court requested in its last opinion that plaintiff give consideration to allowing PBS to set off its claim "in order to bring this litigation to an end." *Id.* at 76. Plaintiff did not agree to do so and the court now considers whether an exception to the mutuality requirement should be made.

Defendants correctly note that the federal and New York State courts have held that the mutuality rule is relaxed when necessary to prevent injustice. *See, e.g., Gray v. Rollo,* 85 U.S. (18 Wall.) 629, 633, 21 L.Ed. 927, 929 (1873) ("a court of equity will deviate from the strict rule of mutuality, allowing a set-off [where] the justice of the particular case requires it, and ... injustice would result from refusing it...."); *Beecher v. Vogt Manufacturing Co.,* 227 N.Y. 468, 473, 125 N.E. 831 (1920) (lack of mutuality may be excused to prevent injustice). In *In re Sherman Plastering Corp.,* 346 F.2d 492, 494 (2d Cir.1965), for example, the Second Circuit allowed setoff despite the absence of mutuality, noting that doing so would neither prejudice nor unfairly benefit the parties and outside obligors and creditors. Similar considerations make an exception to the mutuality rule appropriate in the case at bar.

As in *Sherman Plastering,* 346 F.2d at 494, disallowing setoff in this case "would frustrate the manifest equitable purposes of section 68 [the predecessor of § 553]." The mutuality requirement is grounded in the desire to balance equitable and bankruptcy preference considerations. *See generally,* 4 Collier on Bankruptcy ¶ 553 (15th Ed.1989). On the one hand, it is no doubt

---

**6.** Section 553(a)(3) of the Bankruptcy Code, 11 U.S.C. § 553(a)(3) (1988), expressly prohibits setoff where "the debt owed to the debtor by [a] creditor was incurred by such creditor ... for the purpose of obtaining a right of setoff against the debtor."

unfair to require a creditor to pay its obligation in full while the bankrupt pays only a fraction of its debt in return. 4 Collier on Bankruptcy ¶ 553 at 553–10 ("The Code recognizes the possible injustice in compelling a creditor to file its claim in full and accepting possible dividends thereon, while at the same time paying in full its indebtedness to the estate."); *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913) (setoff is grounded on the "absurdity" of making A pay B when B owes A). On the other hand, the Code is chiefly oriented toward preventing preferences among creditors. *See, e.g., Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215, 219, 61 S.Ct. 904, 907, 85 L.Ed. 1293 (1941); 4 Collier on Bankruptcy ¶ 547.03. A creditor who can set off an independent debt to the bankrupt may effectively receive full repayment and is therefore in a preferred position vis-a-vis other creditors who cannot. By requiring mutuality of debts, the Code ensures that setoff is allowed only in situations in which the equitable considerations are strongest—i.e., where the claims or debts are owing between the same parties in the same right or capacity. *See, e.g., In re Braniff Airways, Inc.*, 42 B.R. 443, 449 (Bankr.N.D.Tx.1984). It also stands to reason, however, that where as here, preference issues are less relevant, an exception to the mutuality rule may be appropriate.

■ Modern Settings, the bankrupt, is owned and controlled by the same shareholders as Bialystock, and the former has assigned its claim against PBS to the latter. As noted above, PBS now owns PBM's claim against Modern Settings for the 1500oz. of unpaid gold. In my view, therefore, the Bankruptcy Code's concern with providing a preference to creditors *of the bankrupt* is far less relevant here since, if setoff is allowed, PBS's recovery will be from the judgement assigned to Bialystock. Bialystock's rights will not be prejudiced because it acquired the claim against PBS before Modern Settings filed for bankruptcy, and therefore could not have relied on Modern Settings' bankrupt status in acquiring its claim. For the same reasons, PBS will not be unfairly benefitted.

By contrast, Bialystock would receive a windfall if the court were to disallow the setoff. Bialystock is not bankrupt and therefore suffers none of the disabilities of that status, yet it would benefit from the economic shield afforded the bankrupt Modern Settings if setoff is not allowed. It would seem quite inequitable to allow Bialystock to profit from the assignment of Modern Settings' claim but not be responsible for its liability.

Modern Settings cites *In re Applied Logic Corp.*, 576 F.2d 952, 957 (2d Cir.1978), for the proposition that the mutuality requirement is mandatory—that is, that no exception should be made, even to prevent injustice. This is an overly broad reading of that case. In *Applied Logic*, the Second Circuit overturned the bankruptcy judge's *denial* of setoff, declaring that, "[t]he rule *allowing* setoff, both before and after bankruptcy, is not one that courts are free to ignore when they think application would be 'unjust.'" *Id.* at 957 (emphasis added). This is quite different from a holding that a court may not allow setoff for reasons of equity unless mutuality is present. In fact, the *Applied Logic* court's rationale for overruling the bankruptcy court's equitable departure from the Code's setoff provisions was the historic preference for setoff under appropriate conditions. *Id.* at 957–58.

In other language, the *Applied Logic* court did reiterate the tenet that setoff requires mutuality. *Id.* at 958. I do not think, however, that this statement was intended to speak to the issue of equitable exceptions to the mutuality rule. Indeed such an interpretation seems particularly implausible given the *Sherman Plastering* case discussed *supra*.

The remaining stage in this litigation is a trial on the issue of damages. That trial will be set in the court's trial term beginning April 2, 1990.

IT IS SO ORDERED.