Ram ISANAKA, Individually and on Behalf of all Other Non–Resident Indian Investors in Spectrum Power Generation Limited, Plaintiff,

v.

SPECTRUM TECHNOLOGIES USA INC.; Spectrum Technologies USA Inc. of Mauritius; Spectrum Infrastructures Limited, Mauritius; Spectrum Infrastructures Limited, Channel Islands; A.V. Mohan Rao; and Brij Bharteey, Defendants.

Spectrum Technologies USA Inc.; Spectrum Technologies USA Inc. of Mauritius; Spectrum Infrastructures Limited, Mauritius; Spectrum Infrastructures Limited, Channel Islands; and A.V. Mohan Raho, Counter–Claimant,

v.

Ram Isanaka, Counter–Defendant.

No. 99–CV–1358 (LEK/DRH).

United States District Court, N.D. New York.

Feb. 18, 2001.

Richard S. Last, Foreht, Last Law Firm, New York City, for Ram Isanaka.

Terry L. Trantina, Blank, Rome Law Firm, New York City, for Spectrum Tech. USA, Inc.

### MEMORANDUM—DECISION AND ORDER

KAHN, District Judge.

Presently before the Court is a motion to dismiss by defendant Brij Bharteey, a motion to dismiss by defendants Spectrum Technologies USA Inc. ("STUSA"), Spectrum Technologies USA Inc. of Mauritius ("STUSA–Mauritius"), Spectrum Infrastructures Limited, Mauritius ("SIL–Mauritius"), Spectrum Infrastructures Limited, Channel Islands ("SIL–Channel Islands"), and A.V. Mohan Rao (collectively "Corporate Defendants"), and a motion by plaintiff Ram Isanaka for leave of the Court to voluntarily dismiss his class claims and continue his individual claims [1] and for leave to amend his complaint to add up to seventeen new plaintiffs. For the following reasons, defendant Bharteey's motion is GRANTED, Corporate Defendants' motion is GRANTED; and Plaintiff's motion

---

1. Because Plaintiff is seeking an order to voluntarily withdraw his class claims, which the Court grants, the current motions will be construed as only applying to Plaintiff's individual claims.

is GRANTED in part and DENIED in part.

## I. BACKGROUND

The current suit concerns alleged misrepresentations made to Plaintiff regarding his investment in a power plant project located in India and operated by Spectrum Power Generation, Ltd. ("SPGL"). Plaintiff alleges that, during the second half of 1994 and the first half of 1995, defendant Rao solicited him to invest in the SPGL power plant project via STUSA.[2] Plaintiff accepted this offer and purchased 1500 shares of unregistered securities from defendant Rao in February 1995. Around this same time, Plaintiff offered to assist Defendants with the procurement of additional investment funds for the project from Indians residing in this country ("Non–Resident Indians" or "NRIs").

Defendants hired Plaintiff as their agent to solicit investments from NRIs in the states of New York, New Jersey, Illinois, Florida, Arkansas, and California and paid him a 6% commission on all investments he obtained in the form of additional stock in the investment project. Ultimately, according to Plaintiff, over $9.3 million was collected from Non–Resident Indian investors and placed, through STUSA, in two off-shore accounts. According to defendant Rao, the accounts, based in Mauritius and the Channel Islands, were established to benefit the NRIs by taking advantage of favorable tax laws.

Plaintiff alleges that defendant Rao utilized these off-shore accounts, not to protect his investment in the Indian power plant project, but to defraud him and other investors out of money. In particular, Plaintiff claims that the offshore accounts, although holding ninety percent of the NRI's investments, were never utilized to obtain an equity share for the investors in

the SPGL project. Instead, Plaintiff claims that, contrary to the express promises of defendant Rao, he and other NRI investors were granted unregistered stock certificates representing partial ownership in SIL–Mauritius, a holding company of STUSA–Mauritius.

In response to these allegations, Defendants argue that, through defendant STUSA–Mauritius, they transferred all the NRI investment funds, including Plaintiff's, to SPGL. This allowed STUSA–Mauritius, and the NRIs through their ownership interest in SIL–Mauritius, to gain a direct ownership in SPGL. That STUSA–Mauritius, Plaintiff, and the NRI investors have not received any dividends from the power plant project, according to Defendants, does not negate the fact that they complied with the express terms of the investment agreement offered to the NRIs. Instead, Defendants claim that they are currently engaged in litigation with SPGL in the Delhi High court to enforce a promoters agreement that entitles STUSA–Mauritius to unpaid dividends.

Plaintiff filed suit on August 27, 1999 alleging that Defendants' actions violated § 12(2) of the Securities Act of 1933 ("Securities Act"),[3] § 10(b) of the Securities Exchange Act of 1934 ("Securities Exchange Act"),[4] and Rule 10b–5[5] promulgated thereunder by utilizing an instrumentality of interstate commerce to engage in manipulative and deceptive securities practices. Plaintiff also asserted various pendent state law claims against defendants.

## II. DISCUSSION

### A. *Standard for Motion to Dismiss*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), for "failure to state a claim upon which relief can

---

**2.** Defendant Bharteey and defendant Rao each own a 50% stake in STUSA.

**3.** This section of the Securities Act is codified as 15 U.S.C. § 77l(a)(2).

**4.** This section of the Securities Exchange Act is codified as 15 U.S.C. § 78j(b).

**5.** Rule 10b–5 is contained in 17 C.F.R. 240.10b.

be granted," must be denied "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In assessing the sufficiency of a pleading, "all factual allegations in the complaint must be taken as true," *LaBounty v. Adler*, 933 F.2d 121, 123 (2d Cir.1991), and all reasonable inferences must be construed in favor of the plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *see also Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1099 (2d Cir.1988) (applying the principle of construing inferences in favor of plaintiff). As this Circuit has stated, when determining the merits of a motion to dismiss,

> consideration is limited to the factual allegations in [the] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.

*Brass v. American Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993).

The Rules do not require the plaintiff to set out in detail the facts upon which the claim is based, but only that the defendant be given "fair notice of what the ... claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. Individual allegations, however, that are so baldly conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains are meaningless as a practical matter and, as a matter of law, insufficient to state a claim. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir.1987) (applying this standard to a complaint based upon civil rights statutes).

**B. Defendants' Liability Under the Securities Act and Securities Exchange Act**

**i. Statute of Limitations on Plaintiff's Section 10(b) and Rule 10b–5 Claims**

■ Plaintiff's Section 10(b) and Rule 10b–5 claims are subject to the statute of limitations contained in section 9(e) of the Securities Exchange Act.[6] *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 360–61, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991); *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 364 (2d Cir. 1990). Under this portion of the Securities Exchange Act, a party must commence an action to maintain or enforce liability "within one year after the discovery of facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e).

Plaintiff's complaint indicates that defendant Rao misrepresented to him and other NRIs that any funds invested through STUSA would be invested directly in SPGL. The complaint further indicates that defendant Rao, and possibly others, continued to make false misrepresentations to him and other NRIs concerning their investment up until, at the latest, June 1999.[7] Thus, Plaintiff argues that the statute of limitations against him for his section 10(b) and Rule 10b–5 claims began to run in June of 1999.

The Court rejects Plaintiff's argument. As the Second Circuit stated when adopting 15 U.S.C. § 78i(e) as the applicable statute of limitations for section 10(b) and Rule 10b–5 claims, a claimant has "no more than three years after the occurrence" of the conduct inducing the Plaintiff to make its securities purchase to file a section 10(b) or Rule 10b–5 claim. *Ceres Partners*, 918 F.2d at 359. (citing *In re Data Access Sys. Sec. Litig.*, 843 F.2d

---

**6.** Section 9(e) of the Securities Exchange Act is codified as 15 U.S.C. § 78i(e).

**7.** On this date Plaintiff claims he actually discovered the alleged fraud because SIL–

Mauritius turned down his explicit request to arrange for an allotment of SPGL shares equivalent to his holdings in SIL–Mauritius.

1537, 1550 (3d Cir.1988)). Hence, a violation of section 10(b) and Rule 10b–5 "can take place before and up to the time when the sale of securities take place, but not after the investment is made." *Cohen v. McAllister,* 688 F.Supp. 1040, 1044 (W.D.Pa.1988).

■ Reading Plaintiff's complaint liberally, defendants made their first allegedly false statements to Plaintiff prior to his purchase and continued making these false statements to him until June of 1999. However, once plaintiff made his investment with Defendants in reliance upon these statements, the statute of limitations applicable to section 10(b) and Rule 10b–5 began to run and any statements made thereafter by Defendants are inapplicable to this Court's statute of limitations analysis. Accordingly, as Plaintiff's certification indicates that he made his investment with Defendants on or about February 1995 the statute of limitations on his section 10(b) and Rule 10b–5 claims began to run, at the latest, during that month.

This means that Plaintiff had, at most, until February 1998 to file his section 10(b) and Rule 10b–5 claims against Defendants. The instant suit was not filed, however, until late August of 1999. The Court therefore holds that his section 10(b) and Rule 10b–5 claims against Defendants are time barred.

■ Moreover, Plaintiff's section 10(b) and Rule 10b–5 claims are not saved by his assertion that the statute of limitations for them began to run on January 27, 1997, the date he was offered 1900 shares from Defendants for his sales work for them. It is black letter law that the one year period contained in 15 U.S.C. § 78i(e) "begins to run once a plaintiff is put on either inquiry notice or constructive notice of the facts giving rise to his claim." *See Menowitz v. Brown,* 991 F.2d 36, 41 (2d Cir. 1993). As a result, a rule 10b–5 plaintiff

bears an affirmative duty of diligent inquiry into the facts of the alleged securities fraud and is not entitled to "leisurely discovery of the full details of the alleged scheme." *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970). Instead, when circumstances suggest "to an investor of ordinary intelligence the probability that she has been defrauded, a duty of inquiry arises, and knowledge will be imputed to the investor who does not make such an inquiry." *Dodds v. Cigna Sec., Inc.,* 12 F.3d 346, 350 (2d Cir.1993); *see Hirschfeld v. Total Health Sys., Inc.,* 775 F.Supp. 574, 578 (E.D.N.Y.1991).

■ Assuming arguendo that Plaintiff made a second "purchase"[8] of securities when Defendants paid him the additional 1900 shares in 1997 and that Defendants' continued misrepresentations induced him into accepting these shares in lieu of money for his services, Plaintiff cannot reasonably claim that he should not have been aware of the possibility of fraud against him. In particular, Plaintiff's complaint alleges that Defendants promised to buy equity in SPGL in "early 1995." By 1997, the date of Plaintiff's second "purchase," Defendants still had not provided him with any direct evidence of an ownership interest in SPGL.

Nevertheless, Plaintiff, a full two years after Defendants were supposed to have provided him with evidence of an ownership interest in SPGL, accepted these shares. Moreover, even after accepting these shares, he waited another two and one half years before instituting suit. Plaintiff provides no explanation as to why he continued to rely on Defendants' continued statements about his investments nor does he offer any reason why a person of "ordinary intelligence" would not have made additional inquiries about the status of their purchases after the target date of 1995 passed without any indication that Defendants purchased equity in SPGL.

---

**8.** The Court makes no finding as to whether this second transfer of shares to Plaintiff actually constitutes a sale of shares or purchase of shares under the Securities Act or the Securities Exchange Act.

Once 1995 came and went without any concrete evidence regarding Defendants' disposition of Plaintiff's money, Plaintiff had a duty to inquire further about its status and should not have accepted the additional shares without satisfying himself that the shares "purchased" were not tainted by fraud. He did not. Consequently, the Court holds that because Plaintiff did not satisfy his duty of inquiry in the requisite time period established by 15 U.S.C. § 78i(e), his section 10b and Rule 10b–5 claims against Defendants for his receipt of 1900 shares of stock are time barred and Count 1 is dismissed with prejudice.[9]

### ii. Statute of Limitations on Plaintiff's Section 12(2) Claim

█ The Securities Act, in relevant part, states that claims arising under section 12(2) cannot be brought more than three years after sale of the security to the injured investor. *See* 15 U.S.C. § 77m. For purposes of analysis under 15 U.S.C. § 77m, sale occurs when the parties to the transaction obligate themselves to perform the purchase even if formal performance of their agreement happens at some later date. *See Finkel v. Stratton,* 962 F.2d 169, 173 (2d Cir.1992); *Radiation Dynamics, Inc. v. Goldmuntz,* 464 F.2d 876, 891 (2d Cir.1972); *Ackerman v. National Prop. Analysts, Inc.,* 887 F.Supp. 494, 503 (S.D.N.Y.1992). As a result, the formality of a transaction's closing date or the date of the stock certificate's issuance is irrele-

vant to the Court's determination of when the statute of limitations for Plaintiff's section 12(2) claim began to run. *See Finkel,* 962 F.2d at 173.

Plaintiff relies on a host of cases from the 1970's and from outside this Circuit to assert that the "sale" under 15 U.S.C. § 77m occurs on the last date of the relevant transaction. As the above cases indicate, Plaintiff's assertion is in direct contradiction to the law of this Circuit. The relevant inquiry courts in this Circuit must undertake is to determine when the parties obligated themselves to perform the purchase. Using this standard, the Court concludes that the parties became obligated to perform at the time of Plaintiff's transfer of funds to Defendants in February 1995.

█ Indeed, the investor memorandum provided to the Court, notably containing Plaintiff's name as a contact person, and the attached subscription form indicate that upon transfer of funds to Defendants, Plaintiff was locked into the deal for a period of three years. In short, upon Plaintiff's transfer of funds to Defendants he "lost the ability to withdraw from the deal" and the statute of limitations on any section 12(2) claim he had against Defendants began to run. *Finkel,* 962 F.2d at 173. Consequently, his claim became time barred in February of 1998, long before the instant suit was filed.[10] The Court therefore dismisses Count 2 against Defendants with prejudice.[11]

**9.** Plaintiff's failure to institute suit in a timely fashion is made even more egregious as he was an insider and had access to knowledge possibly giving rise to the alleged fraud that other investors lacked.

**10.** The Court also notes that 15 U.S.C. § 77m incorporates similar constructive and inquiry notice requirements as those found in 15 U.S.C. § 78i(e). Thus, even if the Court accepted Plaintiff's assertion that he was not obligated to perform the transaction until after he received his additional 1900 shares in 1997, his claim, for reasons discussed above, would still be time barred as reasonable diligence on his part should have put him on

notice of the allegedly untrue statements Defendants made.

**11.** As to Plaintiff's suggestion that it was impossible for him to discover the actual fraud that Defendants perpetrated against him until June 1999, when SIL–Mauritius expressly refused to transfer SIL shares to SPGL's name and/or to arrange for an equivalent allotment of shares in SPGL to the NRIs for the respective shares of SIL, the Second Circuit has already foreclosed this argument. In *Jackson Nat. Life Ins. v. Merrill Lynch & Co.,* the Court explicitly held that "[t]he three year period [contained in 15 U.S.C. § 77m] is an absolute limitation *which applies whether or not the*

C. *Defendant Brij Bharteey's Motion to Dismiss the Remaining Claims Against Him*

i. Pleading Requirements for Plaintiff to Assert a Claim of Fraud Against Defendant Bharteey

■ The Federal Rules of Civil Procedure require that "the circumstances constituting fraud ... be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). To meet his burden of pleading a claim of fraud against defendant Bharteey, Plaintiff must adequately specify the misleading or fraudulent statements he alleges he relied upon as well as the location, time frame, and identity of those responsible for making the statements in his complaint. *See Goldman v. Belden,* 754 F.2d 1059, 1069–70 (2d Cir.1985); *DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir.1987).

■ However, the requisite intent of the alleged perpetrator of the fraud need not be alleged with great specificity as a plaintiff cannot be expected to plead a defendant's actual state of mind. *See Wight v. Bankamerica Corp.,* 219 F.3d 79, 91 (2000). The Court may infer scienter when the facts alleged show that the claimant possessed a motive to defraud the opposing party and had a clear opportunity to do so. *See Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985).

■ Under these standards, the complaint is utterly deficient as applied to defendant Bharteey. Of the 101 paragraphs in the complaint, only four mention Bharteey. Of those four paragraphs, only paragraph seventy-seven attempts in any way to link him to the alleged fraud at issue in the current case. That paragraph merely states that "Mr. Bharteey is separately and personally liable to plaintiffs for fraud as a willing participant in the fraud,

and/or by virtue of having acquiesced in and accepted the benefits of the fraud with full knowledge thereof."

Nowhere does Plaintiff's complaint indicate specific misleading or fraudulent statements that defendant Bharteey made to Plaintiff that Plaintiff reasonably relied upon. Nowhere does Plaintiff specify the location of any such statements, nor does he mention any time frame for any such statements. In order to counter these deficiencies, Plaintiff argues in his opposition papers that any alleged fraud committed by the Corporate Defendants is presumed to have been committed by defendant Bharteey. In essence, Plaintiff's papers appear to rely on the "group pleading doctrine" in order to avoid the necessity of identifying specific fraudulent acts of defendant Bharteey that expose him to liability. *See generally Elliott Assocs, L.P. v. Hayes,* No. 00 CV 5583, 2000 WL 1886585, 2000 U.S. Dist. LEXIS 18716, at *19 (S.D.N.Y. Dec. 29, 2000).

■ Under the group pleading doctrine, a plaintiff "may rely on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or other group-published information are the collective work of those individuals with direct involvement in the everyday business of the company." *In re Oxford Health Plans, Inc.,* 187 F.R.D. 133, 142 (S.D.N.Y.1999) (internal quotation marks and citation omitted); *see also In re Livent Inc. Sec. Litig.,* 78 F.Supp.2d 194, 219 (S.D.N.Y.1999) (stating that the group pleading doctrine permits plaintiffs "to allege that misstatements contained in company documents may be presumed to be the work of the company's officers and directors") (citations omitted). In essence, when the individual defendant is part of a "narrowly defined group of highly ranked officers or directors who participate[ ] in the preparation and dissemination of a

*investor could have discovered the violation."* 32 F.3d 697, 704 (2d Cir.1994) (emphasis added). For this reason, the Court also is not

at liberty to grant Plaintiff's request to suspend operation of the statute of limitations against him.

[published document], plaintiffs are not expected to bear the burden of having to identify the role of each defendant in the fraud without the benefit of any discovery." *Degulis v. LXR Biotech., Inc.,* 928 F.Supp. 1301, 1311–12 (S.D.N.Y.1996).

Plaintiff's subsequent papers do indicate that Plaintiff might fit the role of an insider under the group pleading doctrine but, as presently drafted, his complaint fails to meet even this lessor pleading standard. Thus, the Court has no choice but to dismiss Plaintiff's fraud claim (Count 3) against defendant Bharteey without prejudice. While dismissing this fraud claim, the Court is mindful that Plaintiff has made an application to replead this claim if necessary and that under Fed.R.Civ.P. 15(a), "leave to amend should be freely given when justice so requires." Fed. R.Civ.P. 15(a). Accordingly, Plaintiff, pursuant to L.R. 7.1(a)(4), is granted leave to file a motion to amend his complaint as to the fraud claim against defendant Bharteey within thirty days of the date of this order to satisfy the heightened pleading requirements of Fed.R.Civ.P. 9(b) or the lessor requirements of the group pleading doctrine.[12]

**ii. Plaintiff's Breach of Contract Claims against Defendant Bharteey**

Plaintiff's fourth cause of action is for specific performance, a remedy for breach of contract, his fifth cause of action. Plaintiff has voluntarily withdrawn his fifth cause of action against defendant Bharteey so the Court does not need to address defendant Bharteey's motion to dismiss as it relates to that cause of action. Plaintiff has not, however, withdrawn his specific performance cause of action against defendant Bharteey.

The core of Plaintiff's specific performance claim is that the Corporate Defendants refused to honor their contractual promise and subsequent oral promises to issue SPGL shares to him. According to Plaintiff, only a court order mandating that Defendants issue him SPGL shares in exchange for his SIL–Mauritius shares will grant him the benefit of his bargain with Defendants. Plaintiff did not withdraw this claim against defendant Bharteey because he is allegedly a director of SPGL and a controlling entity of the Corporate Defendants and might be required to sign documents or otherwise take part in any court ordered transfer and/or reissuance of SPGL shares to Plaintiff.

It is fundamental that corporations are presumed to have an existence separate and distinct from their shareholders, directors, and officers. *See Billy v. Consolidated Machine Tool Corp.,* 51 N.Y.2d 152, 163, 432 N.Y.S.2d 879, 412 N.E.2d 934 (1980). Moreover, it is equally fundamental that courts will not normally impose personal liability upon these individuals for acts of the corporation. *See id.; see also Prudential–Bache Metal Co. v. Binder,* 121 A.D.2d 923, 926, 504 N.Y.S.2d 646 (1st Dep't 1986). Since Plaintiff has pled no facts which would support the imposition of personal liability upon defendant Bharteey requiring him to specifically perform any breach of contract or oral promise, the Court dismisses that claim (Count 4) against him with prejudice.[13]

**iii. Plaintiff's Breach of Fiduciary Duty Claim Against Defendant Bharteey**

Plaintiff's sixth claim against defendant Bharteey alleges that he violat-

---

12. Plaintiff is cautioned that if he chooses to file a motion to amend his complaint and it does not meet the requirements of either Fed. R.Civ.P. 9(b) or the group pleading doctrine as well as the requirements of L.R. 7.1(a)(4), his repled claim will once again be subject to dismissal.

13. To the extent that the Court orders specific performance against the Corporate Defendants for alleged breach of contract, defendant Bharteey, assuming he is a principal of the defendant subject to the order, will be bound to enforce it and can be compelled to sign all relevant papers.

ed his fiduciary duties to Plaintiff. When a claim for breach of fiduciary duty is based primarily upon alleged fraudulent conduct, the heightened pleading requirements of Fed.R.Civ.P. 9(b) apply. *See S.G. Frota v. Prudential–Bache Sec.,* 639 F.Supp. 1186, 1193 (S.D.N.Y.1986); *Granite Partners, L.P. v. Bear Stearns & Co.,* 17 F.Supp.2d 275, 305 (S.D.N.Y.1998). The group pleading doctrine, because of its "extremely limited" scope, does not apply to a claim for breach of fiduciary duty based upon fraud. *Elliott Assocs, L.P.,* 2000 WL 1886585, 2000 U.S. Dist LEXIS 18716 at *20.

 Plaintiff's sixth cause of action alleges that the defendants, and by implication defendant Bharteey, "fraudulently concealed and hide [sic]" the fact that they transferred his money to STUSA–Mauritius and not SPGL. Accordingly, it is based primarily upon fraud and is subject to the heightened pleading requirements of Fed. R.Civ.P. 9(b) and is deficient. Nowhere does it state with particularity as to defendant Bharteey (1) that he made any false representations of material facts; (2) that he had knowledge that the misrepresentation made was false; (3) that he intended to make the misrepresentation so Plaintiff would rely upon it; (4) that Plaintiff reasonably relied upon the misrepresentation; and (5) that Plaintiff suffered injury. *See Apex Oil Co. v. Belcher Co. of New York, Inc.,* 855 F.2d 997, 1008 (2d Cir.1988). As

such, the Court dismisses it without prejudice and grants Plaintiff's request for leave to file a motion to amend his complaint in compliance with L.R. 7.1(a)(4) and Fed. R.Civ.P. 9(b).[14]

### D. Plaintiff's Cross Motion to Amend his Complaint to Add up to Seventeen New Plaintiffs

Plaintiff has filed a cross-motion with this Court seeking, in part, to add up to seventeen unnamed Plaintiffs. Defendants argue that Plaintiff's request to add these new Plaintiffs should be denied as Plaintiff has failed to show that these new Plaintiff's meet the threshold jurisdictional requirements necessary in a diversity case. Moreover, Defendants argue that Plaintiff has a non-waivable conflict of interest against the seventeen new Plaintiffs because of Plaintiff's role as a sales agent of STUSA.

Because Plaintiff has not submitted a proposed amended pleading in compliance with L.R. 7.1(a)(4), the Court is in no position to determine the merits of these arguments. The Court therefore denies Plaintiff's motion to amend his complaint to add up to seventeen new Plaintiffs without prejudice to refile in accordance with L.R. 7.1(a)(4).[15]

### III. CONCLUSION

Accordingly, it is hereby

14. The Court also dismisses Plaintiff's accounting claim (Count 7) against defendant Bharteey without prejudice and grants Plaintiff leave to file a motion to amend his complaint. His complaint provides no factual or other evidence indicating that defendant Bharteey owes him a fiduciary duty based on the pleading requirements of Fed.R.Civ.P. 9(b). It is axiomatic that "[a]bsent any factual allegation or evidence of a fiduciary relationship, [a] cause of action for an equitable accounting cannot stand." *Village of Hoosick Falls v. Allard,* 249 A.D.2d 876, 878, 672 N.Y.S.2d 447 (3d Dep't 1998) (citations omitted). Since Plaintiff has provided no allegations in the complaint to support the existence of a fiduciary relationship, the accounting claim fails.

15. Plaintiff seeks to suspend operation of L.R. 7.1(a)(4)'s requirement that he submit a proposed amended pleading naming the Plaintiffs he wishes to add as he fears Defendants may exert pressure on them and harass them. Suspending operation of this requirement will not prevent the possibility of this occurring, as once the new Plaintiffs are added, the possibility exists that Defendants may engage in such tactics. Given the jurisdictional and waiver issues that exist with regard to these new Plaintiffs and the fact that additional briefing is needed to address whether these Plaintiffs are proper parties, the Court notes that a properly filed motion seeking sanctions against a party that uses unfair tactics more suitably alleviates Plaintiff's concern.

ORDERED that defendant Bharteey's and the Corporate Defendants' motions to dismiss Counts 1 and 2 are GRANTED; and it is further

ORDERED that Counts 1 and 2 are DISMISSED with prejudice; and it is further

ORDERED that defendant Bharteey's motion to dismiss Count 4 against him is GRANTED; and it is further

ORDERED that Count 4 is DISMISSED against defendant Bharteey with prejudice; and it is further

ORDERED that defendant Bharteey's motion to dismiss Count 3, 5, 6, and 7 against him is GRANTED; and it is further

ORDERED that Counts 3, 5, 6, and 7 are DISMISSED without prejudice as to defendant Bharteey; and it is further

ORDERED that Plaintiff's motion for leave to amend his complaint to add up to seventeen new plaintiffs is DENIED without prejudice to refile; and it is further

ORDERED that, pursuant to L.R. 7.1(a)(4), Plaintiff is GRANTED leave to file a motion to amend his complaint as to defendant Bharteey's liability under Counts 3, 6, and 7 and to add up to seventeen new Plaintiff's within thirty days of the issuance of this opinion; and it is further

ORDERED that Plaintiff's motion for leave of the Court to voluntarily dismiss his class claims and continue his individual claims is GRANTED; and it is further

ORDERED that Plaintiff's class claims are dismissed without prejudice and that Plaintiff may continue his individual claims against all of the above captioned defendants; and it is further

ORDERED that the Clerk of the Court serve a copy of this Order on all parties by regular mail.

IT IS SO ORDERED.