Sham **MALHOTRA** and Mervin **Fischman, On Behalf of Themselves and All Others Similarly Situated, Plaintiffs,**

v.

The **EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, AXA Advisors, LLC and Equitable Distributors, Inc., Defendants.**

No. 00–CV–6386 (ADS)(ARL).

United States District Court, E.D. New York.

April 7, 2005.

---

Milberg, Weiss, Bershad & Schulman LLP, New York City (Michael C. Spencer, Weiss, of Counsel), for plaintiffs.

Wilmer Cutler Pickering LLP, New York City (Charles C. Platt, of Counsel), for Defendants.

### AMENDED MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiffs Sham Malhotra ("Malhotra") and Mervin Fischman ("Fischman"),

on behalf of themselves and a putative class of investors, commenced this action against the defendants The Equitable Life Assurance Society of the United States, AXA Advisors, LLC and Equitable Distributors, Inc. (collectively, "Equitable" or the "Defendants") alleging violations of section 10(b) ("Section 10(b)") of the Securities Exchange Act of 1934 (the "Exchange Act") and Securities and Exchange Commission ("SEC") Rule 10b–5 ("Rule 10b–5") promulgated thereunder.

Presently before the Court is a motion by Equitable to dismiss the Second Amended Complaint pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure ("Fed. R. Civ.P."). This Complaint alleges that Equitable made material omissions in the sale of deferred annuity contracts with respect to its point of sale representations and sales brochures. The Plaintiffs also allege that the Defendants are liable as a "controlling person" pursuant to section 20(a) of the Exchange Act.

## I. BACKGROUND

Familiarity with the prior decisions in this case are presumed. *See Malhotra v. The Equitable Life Assurance Soc'y of the United States,* No. 00CV6386 (slip op.) (E.D.N.Y. Sept. 5, 2001); *Malhotra v. The Equitable Life Assurance Soc'y of the United States,* No. 00CV6386 (slip op.) (E.D.N.Y. Mar. 8, 2003); *Malhotra v. The Equitable Life Assurance Soc'y of the United States,* No. 00CV6386 (slip op.) (E.D.N.Y. Mar. 12, 2003); *Malhotra v. The Equitable Life Assurance Soc'y of the United States,* No. 00CV6386 (slip op.) (E.D.N.Y. Feb. 21, 2003). Only the facts central to the instant motion are provided.

The Court takes the following allegations as true for purposes of this motion to dismiss:

The individual plaintiffs Malhotra and Fischman, seek to bring this action on behalf of:

All persons who purchased an individual variable deferred annuity contract or received a certificate to a group variable deferred annuity contract issued by [Equitable], or who made an additional investment through such a contract, on or after October 3, 1997, which contract was used to fund a contributory (not defined benefit) retirement plan or arrangement qualified for favorable income tax treatment pursuant to Internal Revenue Code sections 401, 403, 408, 408A or 457. The covered retirement plans include traditional IRAs, rollover IRAs, Roth IRAs, 401(k) plans, 403(b) plans, state government employee plans, and others.

Sec. Am. Compl. ¶ 1.

The Court takes judicial notice that a variable annuity is an investment device similar to a mutual fund except, unlike a mutual fund, it offers (1) tax-deferred treatment of earnings; (2) a death benefit; and (3) annuity payout options that can provide guaranteed income for life. A variable annuity is considered to be "deferred" when the payments are delayed to the future. National Association of Securities Dealers ("NASD") Investor Alert dated May 27, 2003.

As explained in the Second Amended Complaint, one of the advantages of investing in a deferred variable annuity is the deferral of the taxation of earnings. However, the tax advantage of a deferred variable annuity may be "unnecessary and redundant" to investors funding retirement plans such as an Individual Retirement Account ("IRA") or 401(k). Such is the case because these retirement plans are, by their very nature, automatically tax deferred. *Id.* Thus, because IRAs and 401ks are already tax-deferred, funding

these retirement accounts with a variable annuity will provide no additional tax savings. *See Patenaude v. Equitable Life Assurance Society of the United States; AXA Advisors, LLC,* 290 F.3d 1020, 1023 n. 3, (9th Cir., 2002) ("Under the Internal Revenue Code, funds placed in variable annuity contracts are taxed only when the annuitant withdraws them from the account, which makes variable annuities a much more attractive investment from a tax perspective than mutual funds or other equities. However, this tax advantage of variable annuities is irrelevant to investors who are investing funds set aside through an investment vehicle that is already tax-deferred, such as an IRA or a 401(k).").

Turning to the allegations of the individual representative plaintiffs, the Court notes that only two of the eighty-three paragraphs in the Second Amended Complaint are specific to the class representatives.

## A. As to Sham Malhotra

Sham Malhotra is a citizen and resident of the State of New York and resides in Nassau County. In February 1992, Roger Malhotra, an Equitable Sales Agent of no relation to Plaintiff Malhotra, recommended to Malhotra that he re-invest his IRA in an "Equitable Equi–Vest deferred annuity." The Equitable Agent allegedly did not disclose that the tax deferral provided by an annuity was "redundant and unnecessary" if the investment was for an IRA. On or about February 13, 1992, Equitable issued contract number 92 931 779 to Malhotra. More than seven years later, on August 2, 1999, September 29, 1999, October 5, 1999, and December 21, 1999, Malhotra made additional purchases of units of interest in this same annuity product.

In February 2000, Malhotra's accountant informed him that the "investment of his retirement monies in an annuity was inappropriate and injurious to him because of the redundant nature of the tax deferral provided by the product." Malhotra subsequently contacted the Equitable Agent for an explanation regarding the deferred annuity recommendation and was allegedly incorrectly told that Malhotra was not paying any insurance fees with the annuity product and that "there was 'no problem' having the IRA funded with a deferred annuity."

One month later, in March 2000, Malhotra read an article in Barron's magazine entitled "The $6.4 Billion Ripoff." This article described the deceptive practices by which some insurance companies were marketing deferred annuities to persons who did not need the tax deferral benefits of the product. Malhotra further asserts that if he had been told prior to purchasing the deferred annuity that the tax deferred aspect of the product was redundant and unnecessary for him, he would not have purchased the product in 1992, nor would he have made additional investments in 1999, as recommended by the Equitable agent. Malhotra alleges that he is currently unable to "exit" this investment strategy due to the significant surrender penalties associated with the product.

## B. As to Mervyn Fischman

Dr. Mervin Fischman is a citizen and resident of the State of Florida. In or about February 1999, Michael Sandberg, an "investment professional" with Paine-Webber Inc. ("PaineWebber") was recommended to Fischman. PaineWebber is one of the distribution channels for Equitable Life's annuity products, as developed by Equitable Distributors. When Fischman transferred his accounts to Paine Webber, he told Sandberg that his goal was to obtain more income from his investments. Sandberg recommended to Fischman that

he purchase a variable annuity for his IRA account. However, Sandberg allegedly did not tell Fischman about the insurance fees associated with the annuity or that he was paying for tax deferral benefits that he did not need. Thereafter, Sandberg sold Fischman a $100,000 Equitable Life annuity, using funds from Fischman's existing IRA accounts. Thereafter, Equitable issued an "Accumulator (IRA)" annuity dated March 23, 1999.

In November 1999, Fischman read an article in The Wall Street Journal that alerted him to the "deceptive practices" some insurers used to market deferred annuities to persons who do not benefit from the tax deferral feature of the product. Fischman then sought to "exit" the annuity product but was unable to do so without incurring a substantial surrender penalty.

The first two causes of action arise under section 10(b) and SEC Rule 10b–5 allege that:

(1) "Defendants failed to disclose the tax deferral benefits of a variable annuity are unnecessary for qualified plan investors, and that any permissible investment funding the qualified plan will enjoy the tax benefits already provided by the qualified plan.... Had Plaintiff's ... known the truth, they would not have purchased Equitable's variable annuity contracts"; and

(2) "Defendants failed to disclose that a variable annuity is a suitable investment only when an insurance need supports Defendant's recommendation of the annuity.... Had Plaintiffs ... known the truth, they would not have purchased Equitable Life's variable annuity contracts".

The third cause of action alleges that because of Equitable Life's control of AXA Advisors and Equitable Distributors, as well as its own culpable participation, Equitable Life is liable as a controlling person

within the meaning of Section 20(a) of the Exchange Act.

## II. DISCUSSION

### A. Pleading Requirements

#### 1. The Rule 12(b)(6) Motion to Dismiss

A court may grant a Fed.R.Civ.P. 12(b)(6) motion to dismiss for failure to state a claim only when " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.' " *Tarshis v. Riese Org.*, 211 F.3d 30, 35 (2d Cir.2000), *abrogated on other grounds, Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally. *See id.* (citing *Desiderio v. National Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999)).

In applying these principles, the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Tarshis*, 211 F.3d at 39 (citing *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991)).

#### 2. The Rule 9(b) Particularity requirements

■ Fed.R.Civ.P. 9(b) sets forth additional pleading requirements with respect to allegations of fraud, including actions involving securities fraud. *See Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1127 (2d Cir.1994). This rule, requires that "[i]n all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). However, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." *Id.* To state a claim with the required particularity, a complaint "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir.1999) (quoting *Acito v. IMC-ERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

With regard to allegations of scienter, however, the Private Securities Litigation Reform Act of 1995 (the "Reform Act") heightened Rule 9(b)'s pleading requirement. *See* 15 U.S.C. § 78u–4(b)(3)(A); *see also Press v. Chemical Inv. Servs. Corp.*, 166 F.3d 529, 537–38 (2d Cir.1999). Thus, in securities fraud actions, scienter may not be averred generally. Rather, a plaintiff must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Press*, 166 F.3d at 538 (quoting 15 U.S.C. § 78u–4(b)(3)(A)); *see also Chill v. General Elec. Co.*, 101 F.3d 263, 268–69 (2d Cir.1996).

**B. Statute of Limitations as to Malhotra**

■ With respect to Malhotra, the Defendants argue that the Malhotra's claims should be dismissed because more than three years have passed since the alleged material omission. The Court agrees.

Section 9(e) of the Exchange Act sets forth the relevant statute of limitations for claims brought pursuant to Section 10(b) and Rule 10b–5. This section states, "[n]o action shall be maintained to enforce any liability created under this section unless brought within one year after the discov-

ery of the facts constituting the violation and within three years after such violation." 15 U.S.C. § 78i(e); *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991).

■ Equitable argues that Malhotra's claims are barred by the three-year prong of the statute of limitations. Under this prong, known as the "three-year statute of repose," "a claimant has 'no more than three years after the occurrence' of the conduct inducing the Plaintiff to make its securities purchase to file a section 10(b) or Rule 10b–5 claim." *Isanaka v. Spectrum Technologies USA Inc.*, 131 F.Supp.2d 353, 356 (N.D.N.Y.2001) (citing *Ceres Partners v. GEL Assocs.*, 918 F.2d 349, 364 (2d Cir.1990); *see also In re: Prudential Ins. Co. of Amer. Sales Practices Litigation*, 975 F.Supp. 584, 605 (D.N.J.1996)) (holding that "the three-year limitations period for section 10(b) and Rule 10b–5 claims begins to run upon the date a defendant makes an affirmative misrepresentation or, in the case of an omission, upon the date a duty to disclose the withheld information arises."); *Northwestern Human Servs., Inc. v. Panaccio*, 2004 WL 2166293, at *19 (E.D.Pa. Sept.24, 2004) ("[t]he relevant date for accrual of a section 10(b) claim is the date of a misrepresentation or omission, not the date of sale."); *Antell v. Arthur Andersen LLP*, No. 97 C 3456, 1998 WL 245878, 1998 U.S. Dist. LEXIS 7183 (N.D.Ill. May 4, 1998) (holding that a Rule 10b–5 claim begins to run when a defendant makes an affirmative misrepresentation).

Here, Malhotra made his initial investment in the annuity in 1992, well outside of the three-year statute of repose. Thus, even assuming, for purposes of this analysis only, that Roger Malhotra's representations in 1992 contained actionable omissions under Exchange Act, any claim

arising from Malhotra's original purchase in 1992 or from a subsequent purchase that was based on that omission is barred by the three-year statute of repose from the date of the alleged omission in 1992.

Malhotra claims that "had [he] been told before his purchases that the reason for the insurance fees in the product was to secure a tax deferral benefit that he did not need, he would not have agreed to purchase the product, nor made additional investments as recommended by the Equitable agent," Sec. Am. Compl. ¶ 13. Absent allegations that Malhotra's 1999 purchases were triggered by a new and materially different omission, Malhotra's claims arising out the 1999 purchases would similarly be time barred. *In re Prudential,* 975 F.Supp. at 605 ("[T]o the extent [the plaintiff] seeks relief for misrepresentations or omissions that occurred in connection with his initial purchase, his claims are time-barred. He may, however, pursue claims for misrepresentations or omissions that occurred after [the initial purchase], so long as he can demonstrate that he subsequently made further payments on the policy in reliance thereon."); *see also Isanaka,* 131 F.Supp.2d at 359 ("Reading Plaintiff's complaint liberally, defendants made their first allegedly false statements to Plaintiff prior to his purchase and continued making these false statements to him ... However, once plaintiff made his investment with Defendants in reliance upon these statements, the statute of limitations applicable to section 10(b) and Rule 10b–5 began to run and any statements made thereafter by [d]efendants are inapplicable to the Court's statute of limitations analysis.").

Malhotra has not asserted any new or materially different omissions upon which he relied with respect to the 1999 investments. Therefore, it does not follow that Malhotra's investments in 1999 started the statute of repose anew.

Malhotra's allegations that Equitable's failure to remedy the prior material omission is actionable because it caused him to make subsequent purchases is without merit. Such a holding would eviscerate the three-year statute of limitations because a potential plaintiff would be able to revive a time-barred claim simply by purchasing the same securities at a later date and claim a "continued omission." Here, more than seven years passed since the date Malhotra initially purchased the annuity. Thus, the Court finds that a reasonable investor such as Malhotra should have consulted his tax advisor and/or accountant during that time regarding his IRA. *Isanaka,* 131 F.Supp.2d at 358 (stating that a plaintiff "bears an affirmative duty of diligent inquiry into the facts of the alleged securities fraud and is not entitled to 'leisurely discovery of the full details of the alleged scheme.' ") (quoting *Klein v. Bower,* 421 F.2d 338, 343 (2d Cir.1970)).

Accordingly, the Defendants' motion to dismiss Malhotra's claims for failing to comply with the three-year statute of limitations is granted.

## C. Motion to Dismiss as to Fischman

Turning to the remaining causes of action relating to Fischman's annuity purchase in March of 1999, Fischman claims that Equitable omitted material information which induced him to purchase Equitable's annuity. In particular, Equitable allegedly:

> had a duty to disclose to prospective purchasers of Equitable variable annuities for placement in qualified retirement plans that the main economic benefit of the product, tax deferral, was unnecessary and redundant in their situation, and that such annuities could be a

suitable investment only when a specific insurance need supports the purchase. Sec. Am. Compl. ¶ 42.

Thus, Fischman contends that Equitable, as a seller of variable annuities, has "a legal duty to affirmatively disclose to qualified retirement plan investors (customers) that the tax deferral feature of the product is unnecessary." Plfs. Mem. in Opp. at 5. The Defendants contend that Fischman fails to satisfy the pleading requirements of Section 10(b) and Rule 10b–5.

Section 10(b) of the 1934 Securities and Exchange Act makes it unlawful for one "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j. Pursuant to this Section, the SEC promulgated Rule 10b–5, which provides:

> It shall be unlawful for any person, directly or indirectly, by use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b–5.

■ Therefore, to state a cause of action under Section 10(b) of the Exchange Act and Rule 10b–5, Fischman must prove that Equitable "(1) made a material mis-representation or a material omission as to which he had a duty to speak, or used a fraudulent device; (2) with scienter; (3) in connection with the purchase or sale of securities." *SEC v. Monarch Funding Corp.*, 192 F.3d 295, 308 (2d Cir.1999).

In support of its motion to dismiss, Equitable first argues that Fischman failed to allege a material omission that the Defendants failed to reveal that induced him to purchase the "Accumulator" annuity. Cases in the Second Circuit have found actionable omissions in two situations. First, when securities law impose a duty to disclose the omitted information. *Resnik v. Swartz*, 303 F.3d 147 (2d Cir.2002) (citing *In re Time Warner Inc. Sec. Litig.*, 9 F.3d 259, 267 (2d Cir.1993)). Second, when the omitted information is required to make other information presented not materially false or misleading. *Id.*

### 1. As to the Alleged Affirmative Duty to Disclose

Fischman alleges that Equitable's duty to disclose arises from: (1) National Association of Securities Dealers ("NASD") Conduct Rules, in particular NASD Conduct Rule 2310, and NASD Notice to Members 99–35 issued May 1999 ("NTM 99–35"). Sec. Am. Compl. ¶ 43; and (2) "[U]nfair insurance trade practices statutes enacted in each of the 50 states." Sec. Am. Compl. ¶ 46.

#### a. As to NASD Conduct Rule 2310

■ Fischman claims that NASD Conduct Rule 2310 created an affirmative duty on behalf to Equitable to advise the Plaintiff of the alleged redundancy and irrelevance of the tax deferral benefit of the annuity when it is being used to fund an IRA. This rule states in part that

> a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the ba-

sis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

NASD Conduct Rule 2310(a). To the extent that the Plaintiff alleges that this rule, in and of itself, creates a duty to disclose the above mentioned information, the Court finds that there is "no right of action simply for a violation of NASD rules." *GMS Group, LLC v. Benderson*, 326 F.3d 75, 82 (2d Cir.2003) (internal citations omitted).

█ If, however, Fischman seeks to use this Conduct Rule in support of his Section 10(b) claim, the Court notes that such "violations may be considered relevant for purposes of § 10(b) unsuitability claims." *Id.* The Court finds that the Second Amended Complaint fails to satisfy the heightened pleading requirements of Rule 10b–5. The Second Amended Complaint states very little about what was specifically said to Fischman by the PaineWebber investment professional and conversely which specific statements were rendered misleading because of the alleged omitted information.

█ With respect to the point of sale representations, the Complaint merely alleges that "[Fischman] told Mr. Sandberg that he wanted to obtain more income from his investments. Mr. Sandberg told Dr. Fischman that he should purchase a variable annuity for his IRA account." Sec. Am. Compl. ¶ 7. These lone allegations are insufficient to meet the pleading requirements enunciated above. *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir.1993) (Stating that a "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."); *see also Rombach v. Chang*, No. 00 Civ. 0958, 2002 WL 1396986, *2, 2002 U.S. LEXIS 15754, at *

6 (S.D.N.Y. June 7, 2002) ("[T]he PSLRA requires that allegations of misrepresentation or omissions of material fact must specify the statement alleged to be misleading, the reason why the statement was misleading, and the facts that form the basis for the belief that the statement is misleading.") (citing 15 U.S.C. 78u–4(b)(1)). In addition, the Complaint fails to set forth any allegations with respect to the relationship between Sandberg and PaineWebber and Equitable, except that "PaineWebber is one of the distribution channels for Equitable Life's annuity products, as developed by defendant Equitable Distributors." Again, this allegation is so lacking in particularity that it cannot impute liability to Equitable

Without particular pleadings as required by Fed.R.Civ.P. 9(b), even if NASD Conduct Rule 2310 establishes an affirmative duty to disclose the alleged omission, the Court finds that no Section 10(b) or Rule 10b–5 claim was sufficiently alleged. *See Burekovitch v. Hertz*, No. 01 CV 1277(ILG), 2001 WL 984942, *9, 2001 U.S. Dist. LEXIS 12173, at *27 (E.D.N.Y. July 24, 2001) (holding that an omission claim could not be maintained where plaintiff did not point to previous statements that were misleading without further disclosures); *see also Rombach*, 2002 WL 1396986, *4, 2002 U.S. Dist. LEXIS 15754, at *12 (dismissing claims pursuant to Rule 9(b) in case where plaintiffs failed to "state with particularity the specific facts in support of their belief that these statements were false when made.")

### b. As to NTM 99–35

█ The Plaintiff also argues that NTM 99–35 also established an affirmative duty of disclosure. The Court disagrees. This Notice states in pertinent part that

when a *registered representative* recommends the purchase of a variable

annuity for any tax-qualified retirement account (e.g., 401(k) plan, IRA), the registered representative should disclose to the customer that the tax deferred accrual feature of the variable annuity is unnecessary.

NTM 99–35 (emphasis added).

■ At the outset, NTM 99–35 is inapplicable to Fischman's transaction because it was issued in May 1999, more than one month after the alleged transaction. Second, "NASD Notices ... are not law and noncompliance therewith cannot itself constitute a violation of the federal securities laws." *Donovan v. Amer. Skandia Life Assur. Corp.*, No. 02 Civ. 9859, 2003 WL 21757260, at * 1 (S.D.N.Y. July 31, 2003) aff'd 96 Fed.Appx 779 (2d Cir.2004) (citing *Resnik v. Swartz*, 303 F.3d 147 (2d. Cir. 2002)); *but see Drnek v. Variable Annuity Life Assur.*, No. 01 Civ. 0242, 2004 WL 1098919, at *3 (D.Ariz. May 4, 2004) (Finding that if a relationship is established between the buyer and seller, "a duty to inform the buyers of material information including the information described in [NTM 99–35]."). Third, this Notice applies to "registered representatives" who recommend a variable annuity in a point of sale transaction and does not apply to issuers of annuities. Here, the "registered representative" involved in the point of sale transaction was Sandberg, who is not named as a defendant in this action. Therefore, based on the allegations in the Complaint, this Notice is inapplicable to Equitable. Fourth, NASD Notice 99–35 expressly states that a registered representative may recommend a variable annuity for a tax-qualified retirement account "when its other benefits, such as lifetime income payments, family protection through the death benefit, and guaranteed fees" support the recommendation. NTM 99–35 at ¶ 11. Thus, according to NTM 99–35, in certain circumstances, a variable annuity may properly be recommended such as in a case where an insurance need

supports the recommendation. However, because the Complaint lacks particularity with respect to Fischman's personal financial situation and potential insurance needs, the Court finds that Fischman does not sufficiently allege that Equitable breached its duty to disclose this information.

### c. As to State Insurance Statutes

With respect to this alleged duty to disclose, the Complaint states that "the unfair insurance trade practices statutes enacted in each of the 50 states requires fair dealing in the sale of insurance products, including full disclosure of material information in connection with the sale of variable annuities." Sec. Am. Compl. ¶ 46. However, nowhere in the 83 paragraph complaint, does the Plaintiff cite the relevant New York statute. As such the Court is not able to analyze this allegation.

### 2. As to the alleged material omissions

■ Under Section 10(b) and Rule 10b–5, a misrepresentation or omission is material if there is a "substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *SEC v. First Jersey Secs.*, 101 F.3d 1450, 1466 (2d Cir.1996). The "total mix" of information include information "reasonably available" to the plaintiff. *See e.g., United Paperworkers Int'l Union v. International Paper Co.*, 985 F.2d 1190, 1198 (2d Cir.1993).

■ A statement or omission will be considered material if there is a substantial likelihood that a reasonable investor would consider it important in making an investment decision. *Basic Inc. v. Levin-*

*son,* 485 U.S. 224, 231–32, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988); *ZVI Trading Corp. Employees' Money Purchase Pension Plan & Trust v. Ross* (*In re Time Warner Sec. Litig.*), 9 F.3d 259, 267–68 (2d Cir. 1993). Thus, "[d]isclosure of an item of information is not required, however, simply because it may be relevant or of interest to a reasonable investor." *Resnik,* 303 F.3d at 154. *Goldman v. Belden,* 754 F.2d 1059, 1067 (2d Cir.1985) ("[c]omplaint may not properly be dismissed pursuant to Rule 12(b)(6) … on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance.").

■■ Here, Fischman attempts to plead that Equitable omitted information relating to the redundancy of the tax benefit when funding an IRA in its agent educational materials, customer sales presentations, and statements made during the point of sale. The Second Amended Complaint contains many statements about the various products offered by Equitable. However, because Fischman purchased the Accumulator (IRA), the Court will restrict its analysis to the allegations relating to this product.

With respect to the "Accumulator (IRA)" the Plaintiff cites to one promotional piece that refers to the tax-deferral benefits of the Accumulator IRA. Not only does the Complaint fail to allege that Fischman received or relied upon any advertising brochure in any manner, but, in the Court's view, the excerpted language included in the Complaint, in and of itself, does not rise to the level of a material omission. For example, the advertising brochure quoted in the Second Amended Complaint states in part:

Tax Deferral. GETTING THE MOST OUT OF YOUR MONEY. Whether you're retiring today or several years from now, tax-deferred investing is one of the best ways to accumulate funds. That's because with a tax-deferred investment you pay no taxes on any dividends, interest, or capital gains until you withdraw your money. This allows your money to potentially grow faster tan if it were invested in a similar, but taxable investment.

Sec. Am. Compl. ¶ 52. The Court finds that this information is not misleading to the Plaintiff because it apparently accurately explains the tax deferral benefits of the annuity. Without more detailed allegations, the Court is left with the conclusion that a reasonable investor, especially an individual such as Fischman who at the time in question had already accumulated at least $100,000 in his IRA, should be aware of the inherent tax deferral benefits of his investment account. Presumably, the tax deferral nature of such an account was a significant reason why Fischman opened an IRA in the first place. Thus, in light of the language included in the promotional material, the addition of language stating that funding an IRA or similar account with an annuity does not alter the "total mix" of information include information "reasonably available" to the plaintiff. *See e.g., United Paperworkers Int'l Union,* 985 F.2d at 1198 (2d Cir.1993).

As to the Plaintiff's allegation regarding the statements made at the point of sale, for the reasons set forth in Section II(C)(1)(a) *supra,* the Court finds that these allegations fail to meet the heightened pleading requirements of Section 9(b).

Accordingly, Fischman failed to sufficiently allege actionable omissions. Thus, his first two causes of action are dismissed.

**D.   As to Section 20(a)**

Section 20(a) provides that a control person is secondarily liable for violations of

section 10(b) of the Securities Act. In order to find secondary liability, plaintiffs must show a primary violation by the controlled person whom the controlling persons control. Because the Court dismissed the Section 10(b) and Rule 10b–5 claims pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b), the section 20(a) claims must be dismissed as well. *In re Symbol Technologies Class Action Litig.*, 950 F.Supp. 1237, 1246 (E.D.N.Y.1997) ("If there is no § 10(B) securities fraud claim, there can be no related claim under § 20"); *Rombach*, 2002 WL 1396986, *10, 2002 U.S. Dist. LEXIS, at *29 (Dismissing Section 20(a) claim where underlying Section 10(b) was dismissed for failing to state a claim.). Accordingly, this cause of action is dismissed.

**E. Leave to Amend**

Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir.1991); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir.1991) (it is the usual practice upon granting a motion to dismiss to allow leave to replead). Leave to amend should be freely granted, "especially where dismissal of the complaint [is] based on Rule 9(b)." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54–55 (2d Cir.1995); *Luce v. Edelstein*, 802 F.2d 49, 56–57 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend." (citation omitted)). Here, the Plaintiffs had the opportunity to amend the complaint three times. However, because the Court never addressed the adequacy of the pleadings with respect to Rules 12(b)(6) and Rule 9(b), the Court will grant Fischman leave to amend so he may address the pleading deficiencies set forth in this Memorandum.

**III. CONCLUSION**

Based on the foregoing, it is hereby

**ORDERED,** that Equitable's motion to dismiss the second amended complaint is **GRANTED;** and it is further

**ORDERED,** that the claims of Malhotra are barred by the statute of limitations and are dismissed in their entirety with prejudice; and it further

**ORDERED,** that the claims of Fischman are dismissed without prejudice pursuant to Rules 9(b) and 12(b)(6) of the Fed.R.Civ.P.; and it is further

**ORDERED,** that Fischman is granted leave to file a third amended complaint within thirty days from the date of this order and that the failure to file within this time period will render the dismissal of the complaint with prejudice; and it is further

**ORDERED,** that the Clerk of the Court is directed to amend the caption to read as follows:

MERVIN FISCHMAN, On Behalf of himself and All Others Similarly Situated,

Plaintiffs,

-against-

THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, AXA ADVISORS, LLC and EQUITABLE DISTRIBUTORS, INC.,

Defendants.

**SO ORDERED.**