RKA Film Financing, LLC, Plaintiff,

against
Ryan Kavanaugh, COLBECK CAPITAL MANAGEMENT LLC, COLBECK CAPITAL, LLC, COLBECK PARTNERS IV, JASON COLODNE, JASON BECKMAN, DAVID AHO, RAMON WILSON, ANDREW MATTHEWS, GREG SHAMO, TUCKER TOOLEY, and STEVE MNUCHIN, Defendants.


652592/2015

Plaintiff
RKA Film Financing LLC
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022
BY: Christopher J. Clark
Benjamin Naftalis 
Defendant
Steve Mnuchin
SULLIVAN & CROMWELL LLP125 Broad Street
New York, NY 10004
BY: Robert A. Sacks
Andrew J. Finn
John P. Collins, Jr. 


Charles E. Ramos, J.

In motion sequence 008, Defendant Steve Mnuchin ("Mnuchin") moves to dismiss all claims against him set forth in plaintiff RKA Film Financing, LLC's ("RKA") second amended complaint ("SAC") pursuant to CPLR 3211(a)(5) and (7). Mnuchin also moves for sanctions against RKA in the form of costs and fees.
For the reasons set forth below, this Court grants the motion to the extent of dismissing [*2]the SAC as to Mnuchin, but denies Mnuchin's motion for sanctions.
Background
The following factual allegations are taken from the SAC and the accompanying memoranda and are assumed to be true for purposes of disposition.
RKA alleges that Ryan Kavanaugh ("Kavanaugh"), Colbeck Capital Management, LLC ("Colbeck Management"), Colbeck Capital ("Colbeck Capital"), LLC, Colbeck Partners IV ("Colbeck Partners"), Jason Colodne ("Colodne"), Jason Beckman ("Beckman"), David Aho ("Aho"), Ramon Wilson ("Wilson"), Andrew Matthews ("Matthews"), Greg Shamo ("Shamo"), Tucker Tooley ("Tooley"), and Mnuchin (collectively, "Defendants"), through repeated misrepresentations, misled RKA into believing that it was investing in a low-risk lending facility that would fund only print and advertising ("P & A") expenses related to the release of major motion picture films by special purpose entities ("SPE") (SAC, ¶ 2).
RKA is a media financing company that decided in 2014 to lend money to Relativity, a non-party.
Relativity is a privately-held global media company located in California, with numerous affiliates and subsidiaries, including film SPEs, which finance, produce, and advertise films (SAC, ¶ 20).
From April 2014 to June 2014, RKA negotiated terms of financing with representatives of Relativity and the Colbeck Defendants, part of a New York-based financial advisory firm that also loaned and invested money to Relativity. RKA alleges that during these negotiations, Kavanaugh, Matthews, Colbeck, Aho, and Wilson made a series of misrepresentations regarding the P & A facility to induce RKA to invest large sums of money (SAC, ¶ 30).
RKA alleges that from May 14, 2014 to June 2014, it conducted extensive diligence through conversations and email correspondence with Aho, Colbeck, and other agents of Relativity (SAC, ¶ 34).
In June 2014, RKA agreed to extend financing of $58.5 million worth of P & A expenses involving specific Relativity films (SAC, ¶ 38).
Thereafter, on June 30, 2014, Defendants caused certain SPEs to enter a P & A financing agreement with RKA ("Funding Agreement"). Plaintiffs allege that the Funding Agreement contains several false representations, including that RKA's investment would only be used for P & A expenses of particular films that RKA provided loans for (SAC, ¶ 40).
Between June 30, 2014 and March 17, 2015, RKA made P & A funds available for ten SPEs to finance the P & A for ten films, including, but not limited to: Women in Black 2, Black or White, Solace, Masterminds, and November Man, amounting to a total of $73.6 million (SAC, ¶ 52).
RKA alleges that each time it made monies available, Kavanaugh falsely represented that the P & A funds would only be used by the borrowing film SPEs for P & A expenses for each film, despite awareness of Relativity's financial decline. RKA alleges that instead of being used for their stated purposes, the funds were used to pay for general corporate expenses (SAC, ¶ 31).
On October 2, 2014, Mnuchin joined Relativity's Board as a non-executive director and co-chairman, after Dune Capital ("Dune"), his private investment firm, invested $104 million in Relativity (SAC, ¶ 48). RKA alleges that in conjunction with Mnuchin's investment in Relativity, the law firm of Jones Day provided Mnuchin with an opinion detailing Relativity's debt facilities, [*3]including the RKA P & A facility ("Jones Day Opinion") (SAC, ¶ 48). The Jones Day Opinion stated that "each facility could be and was being used for working capital" (SAC, ¶ 48).
Mnuchin also served as the CEO and Chairman of OneWest ("OneWest"), a commercial lender to Relativity (SAC, ¶ 18). In 2012, OneWest made contributions to Relativity amounting to $160 million (SAC, ¶ 45). RKA alleges that through Mnuchin's position at OneWest, he had complete access to the inner-workings of Relativity's finances and details on Relativity's use of the P & A facility (SAC, ¶ 45).
From January to April 2015, Wilson, Matthews, and Kavanaugh continued to represent to RKA that certain films would be released (SAC, ¶¶ 55-56). Specifically, on April 1, 2015, Wilson represented that the unreleased films would be released by September 30, 2015.
On April 6, 2015, in response to RKA's request, Wilson and Matthews provided information regarding the P & A funds that had been drawn, which purportedly revealed that "only $1.7 million had actually been spent on P & A" (SAC, ¶ 60).
On April 10, 2015, RKA spoke with Kavanaugh and Shamo to confirm that the four unreleased films would be released on time, and that the $69.4 million in P & A funds would be available for the P & A of those films (SAC, ¶ 63).
Several days later, on April 13, 2015, Beckman admitted that Kavanaugh and Relativity had misappropriated the P & A funds and used them for improper purposes (SAC, ¶ 64). Immediately thereafter, Kavanaugh, Matthews, and Wilson purportedly denied RKA's request to inspect Relativity's books and Shamo and Tooley prevented RKA from exercising its inspection rights (SAC, ¶ 65).
On April 17, 2015, Kavanaugh purportedly admitted that RKA's P & A funds had been misappropriated (SAC, ¶ 67).
On May 29, 2015, Mnuchin resigned from the Relativity Board (SAC, ¶ 71).
On May 30, 2015, Relativity defaulted on a loan from OneWest (SAC, ¶ 72). Subsequently, Mnuchin allegedly began seizing approximately $50 million from Relativity's accounts to recoup OneWest's loan (SAC, ¶ 72).
On July 30, 2015, Relativity filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (See In re Relativity Fashion, LLC, Case No. 15-11989 (SDNY Bankr. 2015).
It is undisputed that Mnuchin did not participate in any of the abovementioned correspondence, and did not have any direct contact with RKA during the execution and performance of the Funding Agreement.
On March 9, 2016, RKA filed its first amended complaint, asserting claims for fraud, fraud in the inducement, conspiracy to commit fraud, negligent misrepresentation, conversion, breach of the covenants of good faith and fair dealing, and breach of fiduciary duty.
On January 3, 2017, the Court granted Mnuchin's motion to dismiss, but permitted RKA to file a second amended complaint. The SAC pleads fraud, fraud in the inducement, and negligent misrepresentation.
At oral argument on April 11, 2017, this Court ordered the parties to submit additional briefing regarding any conditions precedent to RKA's obligation to advance the loans at issue.
Discussion
Mnuchin files the instant motion to dismiss the claims against him under CPLR [*4]3211(a)(5) and (7), and seeks sanctions against RKA for including Mnuchin in this lawsuit without any good faith basis.
To prevail on a fraud claim, a plaintiff must establish that a "defendant's misrepresentations were the direct and proximate cause of the claimed losses" (Friedman v Anderson, 23 AD3d 163, 167 [1st Dept 2005]). "Although a cause of action for fraud may be predicated on acts of concealment, there must first be proven a duty to disclose material information" (Dembeck v 220 Cent. Park South, LLC, 33 AD3d 491 [1st Dept 2006]).
In pleading a fraud claim, a plaintiff must meet the more stringent pleading requirement set forth in CPLR 3016(b), specifically that the "circumstances constituting the wrong be stated in detail" (CPLR 3016[b]). Mere allegations of fraudulent intent are insufficient (New York City Health & Hosps. Corp. v St. Barnabas Community Health Plan, 22 AD3d 391 [1st Dept 2005]). Further, a fraud claim must clearly allege the circumstances constituting the wrong in detail (J.A.O Acqusition Corp. v Stavitsky, 18 AD3d 389, 391 [1st Dept 2005]) (internal quotations omitted).
RKA alleges that Mnuchin learned of Kavanuagh's scheme to market a supposedly low risk P & A facility to investors and to subsequently misappropriate those funds during his time as a non-executive director of Relativity (SAC, ¶ 80[f]). Plaintiffs allege that despite Mnuchin's awareness that Relativity was using RKA's funds improperly, he "swept Relativity's operating account, which contained much of RKA's misappropriated funds" (SAC, ¶ 80[f]).
In support of his motion to dismiss, Mnuchin alleges that RKA fails to establish that Mnuchin made a single misrepresentation of material fact to RKA or was even aware of the purported fraudulent misconduct that occurred months prior to his affiliation with Relativity.
Mnuchin also argues that RKA does not sufficiently establish that OneWest's seizure of $50,000,000 was caused by Mnuchin, and included a substantial portion of money advanced by RKA. According to Mnuchin, RKA's baseless assertions that because of his personal relationship with Kavanaugh and his due diligence, he induced RKA to enter into the Funding Agreement warrant sanctions.
The Court finds that RKA has failed to establish a claim for fraud against Mnuchin. The Court recognizes the liberal pleading requirements at the motion to dismiss stage (EBC I, Inc. v Goldman, Sachs & Co., 5 NY3d 11 [2005]). However, absent substantive allegations that Mnuchin was responsible for, aware of, or participated in the purported fraud surrounding the Funding Agreement, liability cannot attach (Prudential-Bache Metal Co. v Binder, 121 AD2d 923 [1st Dept 1986]). Further, RKA does not sufficiently establish that Mnuchin was aware of the alleged misrepresentations and their implications. Mnuchin's personal friendship with Kavanuagh is insufficient to establish awareness or liability.
Further, Mnuchin's due diligence of Relativity's finances and lending facilities conducted in August 2014 combined with the legal opinion he received from Jones Day which confirmed that each facility was being used for working capital are insufficient to establish that Mnuchin was aware of and helped conceal this purported fraudulent scheme.
RKA has yet to identify a specific factual misrepresentation made by Mnuchin to RKA. Mere knowledge (or awareness) of Relativity's finances is inconclusive to establish fraud absent evidence of any representation made by Mnuchin to RKA (See WorldCom, Inc. v Segway Mktg., 262 AD2d 164, 164 [1st Dept 1999]).
The Court also finds that RKA's claims with respect to Mnuchin's sweep of Relativity's accounts with full knowledge that they contained a portion of RKA's P & A funds to be without merit and irrelevant to whether Mnuchin can be held liable for fraud.
Even if it can be established that Mnuchin had knowledge of purported misconduct with respect to the misrepresentations regarding the Funding Agreement and the conditions precedent to advance the loans at issue, Plaintiffs have failed to establish the existence of a relationship between Mnuchin and RKA mandating any duty of disclosure (Dembeck v 220 Cent. Park South, LLC, 33 AD3d 491 [1st Dept 2008]). Absent a fiduciary or heightened duty, Mnuchin had no obligation to disclose the purported misconduct surrounding the Funding Agreement or the subsequent payments relating to it. In any event, RKA does not allege that he was privy to it.
To prevail on a fraudulent inducement claim, a plaintiff must establish "a material misrepresentation, known to be false, made with the intention of inducing reliance, upon which [it] actually relie[d], consequentially sustaining a detriment" (Frank Crystal & Co., Inc. v Dillman, 84 AD3d 704 [1st Dept 2011]).
RKA alleges that before, in the process of, and after RKA provided loans to finance the P & A facility, Defendants made repeated misrepresentations to RKA (SAC, ¶ 90). RKA further alleges that it reasonably relied on Defendants' misrepresentations when it chose to invest in the P & A facility and continued to make money available to the SPEs.
Mnuchin persuasively argues that it would be factually impossible for RKA to prevail under a fraudulent inducement theory because he was not a member of the Relativity's board until October 2014, more than three months after the Funding Agreement was executed.
Likewise, RKA has failed to set forth a claim for fraudulent inducement against Mnuchin. The SAC does not allege that Mnuchin had any personal contact with RKA, that he was involved in the execution or performance of the Funding Agreement, and, most significantly, any material misrepresentation made by Mnuchin to RKA.
In order to plead a claim for negligent misrepresentation, a plaintiff must demonstrate: "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on such information (JAO Acquisition Corp. v Stavitsky, 8 NY3d 144 [2007]). Like fraud claims, a claim for negligent misrepresentation must be pled with particularity (Ferro Fabricators, Inc. v 1807-1811 Park Ave. Dev. Corp., 127 AD3d 479 [1st Dept 2015]).
At the outset, RKA's negligent misrepresentation claim fails due to the absence of a privity-like relationship between Mnuchin and RKA. Mnuchin's status as a non-executive director of Relativity, his prior investments in the corporation, or his relationship with Kavanaugh are insufficient to put him "in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified" (Kimmell v Schaefer, 89 NY2d 257 [1996]).
The SAC does not allege a relationship between Mnuchin and RKA. RKA does not provide any caselaw to support its assertion that Mnuchin, as a non-executive director of RKA, owes a fiduciary duty to a creditor like RKA. Absent a relationship of trust and confidence, a claim for negligent misrepresentation cannot stand (Mandarin Trading, 16 NY3d at 181).
This Court has considered Mnuchin's arguments regarding sanctions in the form of costs [*5]and fees against RKA, but finds that sanctions are unwarranted absent evidence of frivolous conduct (Levy v Carol Management Corp., 260 AD2d 27, 34 [1st Dept 1999]).
Accordingly, it is ORDERED
ORDERED that Mnuchin's motion to dismiss is granted, and the claims against Mnuchin are severed and dismissed in their entirety, and the Clerk is directed to enter judgment accordingly, and it is further
ORDERED, that Mnuchin's application for sanctions is denied.
Dated: June 27, 2017
ENTER:
_______________
J.S.C.